UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO CABRALES and TYCHICUS STANISLAS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 21-cv-02122-AJB-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE APPLICATION**<br><br>**(Doc. No. 141)** |

    Presently before the Court is Plaintiffs Federico Cabrales and Tychicus Stanislas' (collectively, "Plaintiffs") Ex Parte Application for an Order (1) prohibiting Defendant BAE Systems San Diego Ship Repair, Inc. from any further allegedly misleading communications with putative class members regarding the claims at issue in this case, including any further attempts to settle the claims at issue in this case with putative class members; and (2) ordering Defendant to produce the identities and contact information for all putative class members to whom they have sent settlement communications and who have purportedly released their claims by signing settlement checks and/or releases. (Doc.

1

No. 141.) Defendant opposes the Application. (Doc. No. 144.) For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Application.

## I.  BACKGROUND

Plaintiff Cabrales filed the original complaint on October 26, 2021, in the Superior Court of California, County of San Diego, as Case No. 37-2021-00045673-CU-OE-CTL. (*See* Doc. No. 1-2.) On December 23, 2021, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1442(a)(1). (*Id.*) On March 7, 2022, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' First Amended Complaint, (Doc. No. 20), and on August 12, 2022, Plaintiffs filed the operative Second Amended Complaint, (Doc. No. 21). On January 4, 2023, the Court granted the parties' joint motion to dismiss Named Plaintiff Steve Whidbee, (Doc. No. 36), and on June 28, 2023, the Court granted in part Defendant's motion to dismiss Named Plaintiff Tony Fuga with prejudice, (Doc. No. 101). On December 6, 2023, the Court granted in part and denied in part Defendant's motion for partial summary judgment, and granted in part and denied in part Plaintiffs' motion for class certification. (*See* Doc. No. 142.)

On November 17, 2023, Defendant "mailed out a packet containing several items to putative class members . . . contain[ing] a settlement check and a cover letter." (Doc. No. 144 at 6.) According to Defendant, the packet included "a copy of the operative Second Amended Complaint ('SAC'), the Labor Workforce and Development Agency ('LWDA') letter, the Release of Claims, Frequently Asked Questions ('FAQs'), and a self-addressed stamped envelope." (*Id.*) Defendant further states "[e]very document in the packet except the LWDA letter was translated into Spanish by a court-certified interpreter and included behind the English version of the respective document." (*Id.*; Declaration of Mary Dollarhide, Doc. No. 144-1, ¶ 2.)

At the end of November 2023, Plaintiffs' counsel learned from several class members that they had received the letter from Defendant, "many of whom have told Plaintiffs' counsel that they did not understand why they were receiving the checks, what the case and settlement agreements were about, what claims they would be releasing if they

accepted the offer and that they felt pressured to accept the offer because of the short time frame for acceptance (21 days) during the holiday season." (Doc. No. 141 at 11; Declaration of Kiran Prasad, Doc. No. 141-1, ¶ 3.) Plaintiffs thereafter contacted Defendant's counsel "requesting Defendant cease issuing the misleading settlement communications and provided notice of their intent to file an ex parte motion." (Doc. No. 141 at 12.) After Defendant rejected this demand, Plaintiffs brought the present *Ex Parte* Application. Plaintiffs argue the letter was misleading, improper, and coercive.

## II.     LEGAL STANDARD

"The Court may limit communications between the parties and putative class members before class certification, but such limits are bounded by the First Amendment." *Camp v. Alexander*, 300 F.R.D. 617, 620 (N.D. Cal. 2014) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The Supreme Court in *Gulf Oil* explained that because class actions present opportunities for abuse and problems in case management, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100. Such an order, however, must be based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and be carefully drawn in such a way "that limits speech as little as possible." *Id.* at 101–02. Applying these standards in *Gulf Oil*, the Supreme Court overturned a district court order requiring prior judicial approval of virtually all communication, because there was no record to support such a sweeping restraint.

While settlements are to be encouraged, settlements "cannot come at the expense of the class action mechanism itself to the detriment of putative class members." *Cnty. of Santa Clara v. Astra USA, Inc.*, No. C 05–03740 WHA, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010). While a defendant and its counsel "generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification," it "may not give false, misleading, or intimidating information,

conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." Manual for Complex Lit. § 21.12.

Courts to examine precertification communications have noted that "a unilateral communications scheme . . . is rife with potential for concern." *Kleiner v. The First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985). Moreover, courts have observed that an ongoing employer-employee relationship is particularly sensitive to coercion. *See Wang v. Chinese Daily News*, 236 F.R.D. 485, 488 (C.D. Cal.) (*rev'd on other grounds by Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013)). "Where communications are misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit, they may be limited by the court, but the orders must be grounded in good cause and issued with a heightened sensitivity for the First Amendment." *Camp*, 300 F.R.D. at 621 (quoting *Kleiner*, 751 F.2d at 1203).

"The best practicable notice envisioned by Rule 23 'conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class.'" *Id.* at 621 (quoting *Kleiner*, 751 F.2d at 1203). One court has explained that no corrective action is necessary when the offers for settlement (1) apprised the putative class about the pending lawsuit, (2) contained contact information for plaintiff's counsel, and (3) included the operative complaint. *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07–01429 JSW, 2007 WL 2572349 (N.D. Cal. Sept. 4, 2007).

### III. DISCUSSION

Plaintiffs first argue that Defendants' communication with putative class members is improper because it omits critical information, including the status of the pending class action, the potential value of each class member's individual claims or an explanation of how it should be calculated, and a description of the basis for offering a "flat amount" $1,000 settlement amount to all putative class members, regardless of their tenure as employees, their employment experiences, or potential claims. (Doc. No. 141 at 15.) Defendant responds it provided the operative Second Amended Complaint, the named Plaintiffs' names, the case name and number, the Court's name, the name and contact

information for Plaintiffs' counsel, a list and explanation of Plaintiffs' claims, and Plaintiffs' LWDA letter. (Doc. No. 144 at 10–11.) The letter further explains "that the settlement amounts covered whatever shortfalls may have occurred due to rounding as well as an additional amount to cover the other claims, while also providing information on the average settlement amounts in previous cases brought against BAE." (*Id.* at 11–12.) Defendant further clarifies that it did not offer a "flat amount" of $1,000 in settlement, but rather, that "[w]hile the gross amount of $1,000 dollars was the lowest amount an individual could receive, 35% of the class received a gross amount *higher* than $1,000, with the highest amount paid being $3,367.17." (*Id.* at 12.)

  The Court finds that the letter and release sent to the putative class members here is not, on balance, an improper pre-certification communication to members of the proposed class, and the cases cited by Plaintiffs support this result. The letter alerts the putative class members to the proposed class action and attaches a copy of the operative Second Amended Complaint as well as the LWDA letter. (*See* Doc. Nos. 141-2, 141-4.) The letter describes the meal and rest period, regular rate of pay, time rounding, business reimbursement, inaccurate wage statements, nonpayment of wages, and waiting time penalties issues Defendant seeks to settle with the putative class. (Doc. No. 141-2 at 2.) The letter clearly explains that engaging in the settlement process is voluntary, and that they will not be negatively affected if they choose not to participate. (*Id.* at 5.) The letter indicates that Plaintiffs counsel's contact information is available on the Second Amended Complaint and invites the putative class members to contact Plaintiffs' counsel for further information about the lawsuit. (*Id.* at 2.)

  Combined, these factors "suggest[] that while trying to encourage settlement, the defendant[] and their counsel took steps to avoid providing inaccurate or misleading information and to assure that they were in compliance with established law." *In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492 (S.D. Cal. 2008); *see Stafford v. Brink's, Inc.*, No. CV 14–1352–MWF(PLAx), 2015 WL 12912324 (C.D. Cal. Aug. 14, 2015) (denying request to invalidate individual settlements because the letter and release were not

"improper, misleading, or coercive"); *Cnty. of Santa Clara*, 2010 WL 2724512, at *4 (holding the letter offering settlement to putative class members was inadequate because it "omit[ted] a summary of the plaintiffs' complaint," nor did it "provide an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case"); *Camp*, 300 F.R.D. at 625 (finding the letter and opt-out declaration was flawed and required a curative notice because in part it omitted "key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint").

Next, Plaintiffs assert the letter is false, misleading, and coercive because it fails to adequately explain the nature of Plaintiffs' claims, uses legalese to describe the release, and fails to provide information regarding the factual basis for Plaintiffs' claims. (Doc. No. 141 at 15.) However, as discussed above, Defendant provided the putative class members with the operative Second Amended Complaint and the LWDA letter, which allows individuals to assess Plaintiffs' claims as written by Plaintiffs themselves. Moreover, unlike the putative class members in *Mitchell v. CoreLogic, Inc.*, No. SA CV 17-2274-DOC (DFMx), 2019 WL 7171595 (C.D. Cal. July 19, 2019), who were only given seven days to consider the monetary offer of settlement, the putative class members here were given twenty-one days.

Plaintiffs further assert that "because the check is accompanied with a 'Form W-2 Wage and Tax Statement' indicating the settlement amount has been transmitted to the IRS, the tax implications of declining the offer are not clear." (Doc. No. 141 at 18.) Defendant responds that the tax form was included with the check as a required part of the communication and is not confusing, and that if not cashed, no taxes will be reported. (Doc. No. 144 at 13.) The Court does not find Plaintiffs' argument here persuasive. Neither does the Court find that the procedure to reject the offer unclear or inconsistent, as asserted by Plaintiffs. (*See* Doc. No. 141 at 19–20.) Specifically, the Court finds Defendant's following statement in the letter to be clear: "[The letter] offers you two choices: (1) accept our offer

and cash the enclosed check; or (2) refuse our offer and return the enclosed check." (Doc. No. 141-2 at 2.) The letter further states:

> If you choose to settle your claims with us, you need only sign the release form and return it in the self-addressed stamped envelope . . . . You may then cash your check anytime within the following twenty-four (24 days) . . . .
>
> * * *
>
> If you are not interested in accepting our offer, we would appreciate you returning both the check and the unsigned release form in the enclosed envelope within the same twenty-one days period after the date of this letter . . . . If you do nothing, you will not receive any settlement money and you will not be bound by the release of claims against SDSR.

(*Id.* at 5.)

Lastly, Plaintiffs argue that claims for unpaid business expenses under California Labor Code § 2802 cannot be released.[1] However, "Section 2804 renders unenforceable a waiver for future Section 2802 claims or an uncompensated waiver of Section 2802 claims, not a negotiated, paid settlement for past, unpaid business expenses." *In re Roark*, No.: 19-CV-2117 TWR (WVG), 2020 WL 7869485, at *7 (S.D. Cal. Dec. 31, 2020); *see, e.g.*, *Aguilar v. Zep Inc.*, No. 13-cv-00563-WHO, 2014 WL 1900460, at *5–6 (N.D. Cal. May 12, 2014) (citing *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 591 (2010)). "As the Court of Appeal explained in *Villacres*, '[w]ere it otherwise, a suit alleging a wage claim could be resolved only through a dispositive motion or a trial.' 189 Cal. App. 4th at 591." *In re Roark*, 2014 WL 1900460, at *7.

Additionally, as asserted by Defendant, "Plaintiffs' requested relief is moot in light of the Court's Class Certification Order as BAE will no longer communicate with the now-certified class members." (Doc. No. 144 at 6.) For these reasons, the Court **DENIES AS MOOT** Plaintiffs' request to prohibit Defendant from any further allegedly misleading

---

[1] Plaintiffs further argue that FLSA claims cannot be released, but as noted by Defendant, the back of the check states: "I understand, however, I am not releasing claims I may have under the Fair Labor Standards Act or Private Attorneys General Act." (Doc. No. 141-3 at 3.)

7

communications with putative class members regarding the claims at issue in this case. Because Plaintiffs state they "will formally move to invalidate the individual settlement agreements and releases at a later date[,]" the Court notes this Order does not affect the viability of Plaintiffs' future motion.

The Court does not find, however, that the letter and release are objective. First, the employer-employee relationship is likely to have some coercive effect over the putative class members. Second, and more importantly, the letter omits a discussion of the Court's orders in this case so far, including the Court's determination on a motion to dismiss and that motions for class certification and for partial summary judgment were pending at the time the letter was sent. The Court does not feel that a corrective letter is necessary, as the fact that the letter "contain[ed] some self-serving advocacy for defendants' position," does not mean that the language of the letter was inappropriate. *Cf. Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151 (D. D.C. 2002). Rather, the Court concludes that in order to counteract the coercive nature of the employer-employee communication, the putative class should be explicitly instructed that they have more time to consider the offer, discuss with Plaintiffs' counsel, and either complete the settlement or withdraw their prior release as they choose.

Before this communication is sent, Defendant is **ORDERED** to provide to Plaintiffs' counsel the identities and contact information for all putative class members to whom they have sent settlement communications and who have purportedly released their claims by signing settlement checks and/or release. These materials are to be provided as soon as possible after receipt of this Order, and **no later than Tuesday, December 19, 2023**.

**IT IS SO ORDERED.**

Dated:  December 12, 2023

Hon. Anthony J. Battaglia
United States District Judge