UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO CABRALES and TYCHICUS STANISLAS, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.:  21-cv-02122-AJB-DDL<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PROVISIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION & PAGA SETTLEMENT**<br><br>**(Doc. No. 179)** |

Presently before the Court is Plaintiffs Federico Cabrales and Tychicus Stanislas' unopposed motion to provisionally certify class, approve the proposed Notice of Class Action Settlement, conditionally certify the FLSA collective action, and for preliminary approval of class action and PAGA settlement. (Doc. No. 179.) The Court finds the matter suitable for decision on the papers and without oral argument, pursuant to Local Civil Rule 7.1.d.1. Accordingly, the Court hereby **VACATES** the hearing currently set for **January 26, 2025, at 2:00 p.m.** For the reasons stated herein, the Court **GRANTS** Plaintiffs' motion.

///

///

1

# I.    BACKGROUND

## A.    Procedural History

On October 26, 2021, Plaintiffs filed a putative class action complaint against Defendant in the Superior Court of California, County of San Diego, which Defendant removed to this Court on December 23, 2021, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1442(a)(1). (Doc. No. 1.) In their operative complaint, Plaintiffs allege claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the California Private Attorneys' General Act, California Labor Code § 2698, *et seq.* ("PAGA"), and other California state labor laws on behalf of themselves and other employees of Defendant. (Second Amended Complaint ("SAC"), Doc. No. 21.) Specifically, Plaintiffs bring claims for: (1) unpaid meal period premiums; (2) unpaid rest period premiums; (3) unpaid overtime; (4) unpaid minimum wages; (5) final wages not timely paid; (6) failure to provide accurate wage statements; (7) failure to reimburse expenses; (8) violation of California Business and Professions Code § 17200, *et seq.*, ("UCL"); and (9) failure to pay straight and overtime compensation. (*Id.*)

On December 30, 2021, Defendant filed its first motion to dismiss Plaintiffs' Complaint. (Doc. No. 6.) On January 20, 2022, Plaintiffs filed the First Amended Complaint ("FAC"), thereby mooting the motion to dismiss. (Doc. No. 9.) Thereafter, on February 24, 2022, Defendant filed a motion to dismiss the FAC and to strike Plaintiffs' class and collective allegations. (Doc. No. 13.) The Court granted in part and denied in part the motion to dismiss and denied the motion to strike. (Doc. No. 20.) On August 12, 2022, Plaintiffs filed the operative SAC. (Doc. No. 21). On January 4, 2023, the Court granted the parties' joint motion to dismiss Named Plaintiff Steve Whidbee, (Doc. No. 36), and on June 28, 2023, the Court granted in part Defendant's motion to dismiss Named Plaintiff Tony Fuga with prejudice, (Doc. No. 101).

On July 26, 2023, Plaintiffs filed a motion to certify class, (Doc. No. 113), and on September 1, 2023, Defendant filed a motion for partial summary judgment, (Doc. No. 126). On December 6, 2023, the Court granted in part and denied in part Defendant's

2

motion for partial summary judgment and granted in part and denied in part Plaintiffs' motion for class certification. (Doc. No. 142.) Specifically, the Court granted summary judgment as to Plaintiffs' state law claims as they applied to 32nd Street and North Island due to the federal enclave doctrine, and as to Plaintiff Stanislaus' FLSA claim, and denied summary judgment of Plaintiffs' collective FLSA claim. (*Id.* at 17.) The Court also granted certification of the following subclasses: (1) Minimum Wage Security Subclass; (2) Overtime Security Subclass; (3) Rounding Minimum Wage Subclass; (4) Rounding Overtime Subclass; (5) Overtime Regular Rate of Pay Subclass; (6) Meal Break Subclass (to the extent it is based upon whether Defendant provided late first meal breaks); (7) Second Meal Break Subclass (to the extent it is based upon whether Defendant denied second meal breaks altogether); and (8) Wage Statement Subclass. (*Id.* at 40.) The Court denied class certification with leave to amend as to the following: (1) Meal Break Subclass (to the extent it is based upon whether Defendant failed to provide employees with full meal breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (2) Rest Break Subclass (to the extent it is based upon whether Defendant failed to provide employees with full rest breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (3) Reimbursement Cellphone Subclass; and (4) Reimbursement Personal Protective Gear and Tools/Equipment Subclass. (*Id.* at 41.)

On November 17, 2023, Defendant mailed out a packet to putative class members containing a cover letter, a copy of the SAC, Plaintiffs' notice to the Labor and Workforce Development Agency ("LWDA"), a Release of Claims, Frequently Asked Questions, a self-addressed stamped envelope, and a settlement check (together, the "Direct Settlement Campaign"). (Doc. No. 145 at 2.) On December 5, 2023, Plaintiffs filed an *ex parte* application for an order (1) prohibiting Defendant from further communications with putative class members regarding the claims at issue in the case, and (2) requiring Defendant to provide Plaintiffs' counsel with the identity and contact information for all putative class members to whom Defendant sent settlement communications and who had

1    purportedly released their claims by signing the settlement check and/or release. (Doc. No.
2    141.) On December 12, 2023, the Court granted in part and denied in part the *ex parte*
3    application. (Doc. No. 145.) Specifically, the Court found moot Plaintiffs' first request to
4    prevent Defendant from further communications with putative class members, as the Court
5    by then had granted the motion to certify class. (*Id.* at 7–8.) Moreover, the Court granted
6    the *ex parte* application as to Plaintiffs' second request for the identity and contact
7    information for the putative class members contacted by Defendant. (*Id.* at 8.) On
8    January 24, 2024, a third-party administrator mailed the corrective letter to class members
9    who were sent the Direct Settlement Campaign. (Declaration of Matthew Matern ("Matern
10   Decl."), Doc. No. 179-4, ¶ 14.)

11   Defendant paid a total gross amount of $1,502,955.87 in individual settlement
12   payments through the Direct Settlement Campaign. (*Id.* ¶ 15; Declaration of Gillian
13   McCreedy, Doc. No. 179-7, ¶ 3.) Approximately 1,379 individuals who were sent the
14   Direct Settlement Campaign cashed the settlement check and/or signed a release of the
15   claims at issue in this action, for an estimated average payment of $1,089.89 per Settlement
16   Class Member. (Matern Decl. ¶¶ 16–17.)

17   **B.    Settlement Negotiations**

18   On December 1, 2022, the Parties attended an Early Neutral Evaluation ("ENE")
19   conference, which was unsuccessful. The Parties also attended an unsuccessful private
20   mediation with Jeffrey Krivis on December 23, 2022.

21   After the Court granted class certification, the Parties attended private mediation
22   with Hunter Hughes on February 16, 2024. After the mediation, on February 19, 2024, Mr.
23   Hughes made a mediator's proposal outlining the material terms of a proposed class action
24   settlement. The Parties did not accept the proposal but continued to negotiate the terms of
25   a proposed Memorandum of Understanding ("MOU"). On March 11, 2024, the Parties
26   fully executed the MOU, which called for the parties to enter into a long-form settlement
27   agreement. On October 21, 2024, the Parties fully executed the Settlement. The same day,
28   Plaintiffs' counsel submitted the Settlement to the LWDA, pursuant to Labor Code

4

§ 2699(s)(2).

## II.    SETTLEMENT AGREEMENT

Plaintiffs and Defendant have executed a Joint Stipulation of Class Action Settlement ("Settlement Agreement" or "Settlement"). (Settlement, Doc. No. 179-8.) The primary terms of Settlement are provided below.

### A.    Settlement Class Members

"Settlement Class Members" means (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the Class Period, (2) all current and former California based non-exempt employees of Acro Service Corporation ("Acro") who were placed to work at BAE for at least one Workweek during the Class Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the Class Period. (Settlement ¶ 34.) "Class Period" means the period from October 26, 2017, through June 1, 2024.[1] (*Id.* ¶ 6.)

"Participating Settlement Class Members" means all Settlement Class Members who (1) do not submit a timely and valid Request for Exclusion and (2) did not previously settle the alleged claims at issue in the Action through an individual settlement agreement with Defendant, including but not limited to through the Direct Settlement Campaign. (*Id.* ¶ 23.)

There are approximately 2,582 Settlement Class Members through the end of the Class Period, including the 1,379 Settlement Class Members who participated in the Direct Settlement Campaign or otherwise directly settled the claims at issue in the lawsuit. (Matern Decl. ¶ 19.) The potential total number of Participating Settlement Class Members is approximately 1,203, including 424 BAE direct hire employees, 749 NSC employees, and 30 Acro employees. (*Id.*) Those Settlement Class Members who previously settled the

---

[1] The Class Period for employees placed to work at BAE by NSC starts on August 9, 2021 because of a prior settlement involving NSC employees in *Thompson v. NSC Technologies, LLC*, Case No. 3:20-cv-00371-JLS(MSB), which released claims through August 8, 2021. (Settlement ¶ 34.)

claims at issue in the action will not be eligible to receive an additional Individual Settlement Payment as part of this Settlement, but they will remain eligible for an Individual FLSA Payment and an Individual PAGA Payment, if they qualify for those payments.[2] (Settlement ¶¶ 10, 20.)

### B. FLSA Collective Members

"FLSA Collective Members" means (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the FLSA Period, (2) all current and former California based non-exempt employees of Acro who were placed to work at BAE for at least one Workweek during the FLSA Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the FLSA Period. (*Id.* ¶ 10.) "FLSA Period" means the period from January 20, 2019 through June 1, 2024. (*Id.* ¶ 12.) The definition of "FLSA Collective Members" includes those individuals who previously entered into an individual settlement agreement with Defendant through the Direct Settlement Campaign. (*Id.* ¶ 10.)

### C. PAGA Members

"PAGA Members" means (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the PAGA Period, (2) all current and former California based non-exempt employees of Acro who were placed to work at BAE for at least one Workweek during the PAGA Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the PAGA Period. (*Id.* ¶ 20.) "PAGA Period" means the period from November 16, 2020 through June 1, 2024. (*Id.* ¶ 21.)

---

[2] The scope of the release entered into by Settlement Class Members who accepted an individual settlement with Defendant through the Direct Settlement Campaign excluded claims under PAGA and the FLSA. (*See* Doc. No. 141-3 at 3.)

"PAGA Members" includes those individuals who previously entered into an individual settlement agreement with Defendant through the Direct Settlement Campaign. (*Id.* ¶ 48.) PAGA Members who submit a timely and valid Request for Exclusion will nevertheless be entitled to an Individual PAGA Payment and remain subject to the release of PAGA claims. (*Id.* ¶ 61.)

### D. Settlement Terms

- Defendant will pay a non-reversionary Maximum Settlement Amount of $6,364,467.87, which includes $4,500,000.00 in new funds, plus:

  - The gross amount of $1,502,955.87, which Defendant previously paid to Settlement Class Members through the Direct Settlement Campaign ("Direct Settlement Amount"); and

  - The gross amount of $361,512, which Defendant paid to Settlement Class Members through retroactive "true-up" payments issued on March 16, 2023 for unpaid meal and rest period premiums ("Retroactive Payment Amount").[3]

- Defendant shall receive a credit for the Direct Settlement Amount and the Retroactive Payment Amount such that the total amount of additional funds Defendant will be required to pay in connection with the Settlement is $4,500,000, plus the employer's portion of payroll taxes of that sum as allocated to wages for Settlement Class Members and FLSA Collective Members.

- The Net Settlement Amount is the amount remaining from the Maximum Settlement Amount after applying the credit Defendant has already paid to Settlement Class Members for the Direct Settlement Amount and the Retroactive Payment Amount and deducting the Class Representative Enhancement Payments, the Class Counsel Award, the Settlement Administration Costs, the FLSA Amount, and the LWDA Payment. The entire Net Settlement Amount will be distributed to Participating

---

[3] On March 16, 2023, Defendant issued "true-up" payments to Settlement Class Members in the aggregate gross amount of $361,512 for underpaid meal and rest period premiums. (Matern Decl. ¶ 18.)

Settlement Class Members with no reversion. If there are any timely submitted opt-outs or reduction in the Class Representative Enhancement Payments, the Class Counsel Award, the Settlement Administration Costs, and/or the LWDA Payment, the Settlement Administrator will proportionately increase the Individual Settlement Payments for each Participating Settlement Class Member so that the amount actually distributed to Participating Settlement Class Members equals 100% of the corresponding Net Settlement Amount.

- In addition to the Individual Settlement Payments to Participating Class Members, the Net Settlement Amount will be used to pay:

  1. Individual FLSA Payments: The FLSA Amount ($15,000) will be allocated to the settlement of Released FLSA Claims and will be divided among FLSA Collective Members of a *pro rata* basis according to the number of Workweeks they worked for BAE during the FLSA Period;

  2. LWDA Payment and Individual PAGA Payments: $100,000 of the Maximum Settlement Amount will be allocated to the resolution of PAGA Members' claims as the LWDA Payment. Pursuant to PAGA, $75,000 of the LWDA Payment will be paid to the LWDA, and $25,000 will be divided among PAGA Members on a *pro rata* basis according to the number of Workweeks they worked for BAE during the PAGA Period;

  3. Class Representative Enhancement Payment: Plaintiffs Cabrales and Stanislas will each be paid a Class Representative Enhancement Payment not to exceed $20,000 (totaling $40,000.00);

  4. Class Counsel's Fees: Plaintiffs will seek attorneys' fees in a separate application prior to final approval in an amount up to one-third of the Maximum Settlement Amount, including the Direct Settlement Amount and the Retroactive Payment Amount, in the amount of $2,121,489.29, plus litigation expenses not to exceed $200,000;

  5. Settlement Administration Costs: Paid from the Maximum Settlement

8

Amount, the Settlement Administrator will be paid in an amount not to exceed $35,000.

- After deducting the above fees and costs, the remaining balance available for distribution (the Net Settlement Amount) shall be distributed to the Participating Class Members. The Net Settlement Amount will be at approximately $1,988,510.71, meaning the average Individual Settlement Payment to Participating Class Members (assuming 1,203 Participating Class Members) is estimated to be $1,652.96.

(*See* Settlement.)

### E.    Releases

In exchange for Defendant's $4,500,000 payment, Participating Settlement Class Members will release and discharge the Released Parties from the following claims against Defendant:

> [A]ny and all wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, that arise out of the allegations in the operative complaint, or any amendments thereto, during the Class Period, including unpaid wages, overtime premium pay, meal and rest period premium pay, failure to reimburse business expenses, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief[.]

(Settlement ¶ 26; *see id.* ¶¶ 29, 58.)

Upon the funding of the $4,500,000, any Settlement Class Member who does not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid Request for Exclusion will be bound by all of its terms. (*Id.* ¶ 59.)

By signing and cashing their settlement check, FLSA Collective Members will consent to opt in to the collective action and will release and discharge the Released Parties from the Released FLSA Claims during the FLSA Period. (*Id.* ¶¶ 27, 60.)

Upon funding of the $4,500,000, PAGA Members, including those who timely and

9

effectively exclude themselves from the Released Class Claims, will release and discharge the Released Parties from the Released PAGA Claims during the PAGA Period. (*Id.* ¶¶ 28, 61.)

## III.    LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the Court must first assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

If the court preliminarily certifies the class and finds the proposed settlement fair to its members, it then appoints a class representative and class counsel. Rule 23(e)(1) requires the court to take certain steps to ensure proper administration of the settlement, including "direct[ing] notice in a reasonable manner to all class members who would be bound by the proposal."

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval[.]'" *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZx), 2013 WL 169895, *2 (C.D. Cal. Jan. 16, 2013) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted), and citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("[t]o determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy

at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")).

## IV.    MOTION FOR CONDITIONAL CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the remaining proposed classes can be certified. *Amchem*, 521 U.S. at 620 (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

### A.    Rule 23 Class Action Settlements

In order to obtain certification of a class action, the plaintiff must provide facts in support of the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). The plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2002). This burden requires the plaintiff to provide sufficient facts to satisfy the four requirements of Rule 23(a) and at least one subsection of Rule 23(b) of the Federal Rules of Civil Procedure. *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). However, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (citing 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability

11

concerns.”)).

### 1.    Rule 23(a) Factors

#### i.    Numerosity

Rule 23(a)(1) requires that the “the class is so numerous that joinder of all members is impracticable.” Fed. R. Civ. P. 23(a)(1). The party seeking certification “do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity.” *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, courts generally find that numerosity is satisfied if the class includes forty or more members. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012). Here, the Participating Settlement Class Members includes an estimated 1,203 members, a significant number that would make joinder impracticable. (Doc. No. 179-1 at 13.) The numerosity prong has been met.

#### ii.    Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. “A class has sufficient commonality ‘if there are questions of fact and law which are common to the class.’” Fed. R. Civ. P. 23(a)(2). The commonality preconditions of Rule 23(a)(2) “are less rigorous than the companion requirements of Rule 23(b)(3).” *Hanlon*, 150 F.3d at 1019.

In this action, all of the remaining claims asserted arise from common facts. Plaintiffs and class members were allegedly subject to the various wage and hour policies that are the subject of this litigation. “Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.” *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) (collecting cases). In addition, the claims of all Class Members are based upon the same California and FLSA labor laws. Therefore, the Court finds the commonality prong has been satisfied.

#### iii.    Typicality

In order for a class representative to satisfy the typicality requirement of Rule 23(a),

they must show that their claims do "not differ significantly from the claims or defenses of the class as a whole." *In re Computer Memories*, 111 F.R.D. 675, 680 (N.D. Cal. 1986). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The class representative's claims and the claims of the class must arise from the same events or course of conduct and must be based on the same legal theory. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Here, Plaintiffs' remaining claims are typical of the claims of the absent Class Members because they arose from the same alleged conduct of Defendant, including failure to compensate for missed breaks as well as failure to reimburse expenses. The Class Representatives and the other Class Members suffered the same type of injury as a result of this alleged conduct, and the Class Representatives' claims are reasonably co-extensive with those of absent Class Members. Plaintiffs have therefore satisfied the typicality prong.

### iv.    Adequate Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Plaintiffs asserts they are able to fairly and adequately protect the interests of the

13

members of the class because they "have no conflict of interest with the Settlement Class" and "will continue to actively participate in the lawsuit as necessary." (Declaration of Federico Cabrales ("Cabrales Decl."), Doc. No. 179-2, ¶ 10; Declaration of Tychicus Stanislas ("Stanislas Decl."), Doc. No. 179-3, ¶ 10.) Also, Plaintiffs retained Class Counsel with extensive experience in the prosecution of wage and hour class actions and who has been appointed previously as adequate class counsel. (*See* Matern Decl. ¶¶ 49–54.) Therefore, Plaintiffs have satisfied the adequate representation prong.

Based on the foregoing, the Court finds Plaintiffs have met their burden of demonstrating each of the four Rule 23(a) requirements.

### 2.    Rule 23(b) Factors

Here, Plaintiffs seek conditional certification of the Settlement Class and the FLSA Collective, *see supra* § II.A–B, under Federal Rule of Civil Procedure 23(b)(3). (Doc. No. 179-1 at 18.) Plaintiffs additionally seek certification, for settlement purposes only, of their uncertified claims for failure to provide required rest periods and failure to indemnify employees for necessary expenditures. (*Id.*) The Court previously denied certification of these claims with leave to amend. (Doc. No. 142 at 41.)

Rule 23(b)(3) requires that questions of law or fact common to the members of the class "predominate" over questions affecting only individual members, and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The legal and factual issues here are common to all members of the proposed Class. As noted by Plaintiffs, the issues are common to all class members as they allegedly were subjected to company policies in a way that gives rise to consistent liability, or lack thereof.

The predominance standard of Rule 23(b)(3) requires a stronger showing by plaintiffs than Rule 23(a)'s commonality standard. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four non-exclusive factors in determining whether the class action is a superior device. These factors include: (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16.

Here, the proposed classes and claims are sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting class members predominate over any questions that may affect only individual members. For example, Defendant's alleged failure to properly pay its employees for all hours worked and provide compliant meal and rest periods are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the questions of fact and law relating to these issues predominate. Further, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy involving potentially 1,203 individual lawsuits for damages. *See Hanlon*, 150 F.3d at 1022. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. Further, Plaintiffs are not aware of any other similar pending actions, the claims arise from employment in California, and Defendant does substantial business in San Diego County.

Because Plaintiffs have successfully demonstrated they have met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b), the Court will provisionally certify the Settlement Class and Plaintiffs' remaining claims for failure to provide required meal and rest periods and failure to reimburse necessary expenditures. ///

### 3.    Rule 23(c)(2) Notice Requirements

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, within twenty (20) calendar days of the entry of the Court's Order granting preliminary approval, Defendant will provide the Class List to the Settlement Administrator, including the respective number of weeks worked by NSC and Acro Settlement Class Members during the Class Period according to Defendant's records. (Settlement ¶ 48.) To implement this notice procedure, the Class List will include their (1) full name; (2) last known mailing address; (3) last known telephone number; (4) social security number; (5) total workweeks during the PAGA Period; and (6) total workweeks during the FLSA Period. (*Id.*) Defendant will also provide the Settlement Administrator with the names of those Settlement Class Members who have previously settled the alleged claims in this action (except for FLSA and PAGA claims) through an individual settlement agreement with Defendant, including but not limited to through the Direct Settlement Campaign. (*Id.*) Plaintiffs will request the necessary information regarding the NSC and Acro (1) Settlement Class Members, (2) FLSA Collective Members, and (3) PAGA Members from each of those entities, which shall be sent simultaneously to the Settlement Administrator and Defendant. (*Id.*)

Plaintiffs propose that within twenty-one (21) calendar days of receiving the Class List information, notice to the Class will be sent, in English and Spanish, to all Settlement Class Members by regular First-Class U.S. mail using the most current, known mailing address identified in the Class List. (*Id.* ¶ 49.) Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct for any identifiable address changes. (*Id.* ¶ 50.) Any Notice Packet

16

returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto. (*Id.*) If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search and will then perform a single re-mailing. (*Id.*) The Response Deadline will be extended by ten days for any Settlement Class Member who is re-mailed a Notice Packet by the Settlement Administrator. (*Id.*)

Having reviewed the proposed Class Notice Packet, the Court concludes the notice complies with Federal Rule of Civil Procedure 23. The Court also appoints Phoenix Settlement Administrators ("Phoenix") as the third-party Settlement Administrator. Phoenix Settlement Administrators must distribute the Class Notice Packet by regular mail to all Class Members for whom such addresses are known within twenty (20) days of the entry of this preliminary approval Order. Because the settlement class satisfies Rules 23(a) and 23(b)(3), and notice was sufficient in accordance with Rule 23(c), the Court **GRANTS** class certification for settlement purposes.

## B. FLSA Collective Action Settlements

Court approval is also required for settlements of private collective actions under the FLSA. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. App'x 682, 683 (9th Cir. 2015) (citing *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)). Although "[c]ollective actions [under the FLSA] and class actions [under Rule 23] are creatures of distinct texts . . . that impose distinct requirements," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018), district courts assess FLSA settlements using a two-step process that is similar to what is required for review of class action settlements under Rule 23. *See Kulik v. NMCI Med. Clinic Inc.*, No. 21-cv-03495-BLF, 2023 WL 2503539, at *3 (N.D. Cal. Mar. 13, 2023).

First, the Court must assess whether the members of the proposed collective are "similarly situated" and may proceed in a collective action. *Id.*; *see Campbell*, 903 F.3d at 1117. Second, the Court must assess whether the proposed settlement is "a fair and

17

reasonable resolution of a bona fide dispute [over FLSA provisions]." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 1477630, at *3 (N.D. Cal. Apr. 15, 2014) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

The FLSA allows employees to bring suit "for and in [sic] behalf of himself or themselves and other employees similarly situated," provided that the additional employees "give[ ] consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). This statute "imposes a lower bar [for certification] than Rule 23." *Campbell*, 903 F.3d at 1112. "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting *Campbell*, 903 F.3d at 1117). "[A]s long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Id.* (quoting *Campbell*, 903 F.3d at 1117). This standard will be met when "plaintiffs allege a single, FLSA-violating policy . . . and argue a common theory of defendants' statutory violations." *Id.* at 949.

The allegations supporting Plaintiffs' FLSA claim are similar to those supporting their California law claims. They allege Defendant "systematically failed to correctly pay, calculate and record regular and overtime compensation for work by Plaintiffs and the other members of the Collective Class, even though Defendant[] enjoyed the benefit of this work, required employees to perform this work and permitted or suffered to permit the work." (SAC ¶ 23.) The Court concludes the contents and legality of Defendant's policies and practices present similar issues of law or fact material to the disposition of the FLSA claim. *See Senne*, 934 F.3d at 948. Accordingly, the Court **GRANTS** conditional certification of the FLSA collective for settlement purposes.

"If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the

18

settlement to constitute a fair and reasonable resolution of a bona fide dispute." *Otey*, 2014 WL 1477630, at *3 n.5 (collecting cases) (internal quotation marks and citation omitted). "[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a [class action] settlement" under Rule 23(e). *See id.* at *11 (applying same fairness factors to settlement involving FLSA collective and class action). Thus, the Court will address the fairness of the settlement as it pertains to both the class and collective actions using the same factors.

## V.    MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Next, the Court must make a preliminary determination regarding whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2). Traditionally, courts in this Circuit assess the fairness, reasonableness, and adequacy of a proposed settlement by balancing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)).

In 2018, Rule 23(e)(2) was amended to require courts to consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
>         (i)    the costs, risks, and delay of trial and appeal;

19

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). With respect to the Rule 23(e)(2)(C)(iv) factor, the Court notes there is no indication of an ancillary agreement made in connection with the proposed settlement between Plaintiffs, Defendant, or their respective counsel of record. The Court therefore turns to the remaining three considerations to determine whether the proposed settlement provides adequate relief to the Class.

"At the preliminary approval stage, a full fairness analysis is unnecessary[.] Closer scrutiny is reserved for the final approval hearing." *Hawkins v. Kroger Co.*, No. 15-cv-2320, 2021 WL 2780647, at *3 (S.D. Cal. July 2, 2021) (internal quotations and citations omitted); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at this stage[.] The court, therefore, will simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members.") (internal quotations and citation omitted).

## A.    Rule 23(e)(2) Factors

### 1.    Adequate Representation

First, the court considers whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). When analyzing the adequacy of the representation, the court must address two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012)

20

(citation omitted). Certification will be denied in instances of "*actual* fraud, overreaching or collusion." *In re Bluetooth*, 654 F.3d at 948 (quoting *Staton*, 327 F.3d at 960).

### i.    Conflicts of Interest

Based on Plaintiffs' declarations, it does not appear they have any interests that conflict with the class other than the proposed incentive award. (*See* Stanislaus Decl. ¶ 10; Cabrales Decl. ¶ 10); *see Staton*, 327 F.3d at 975–76 (discussing conflicting interests for named plaintiff receiving incentive award). Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). "Incentive awards are fairly typical in class action cases," but are ultimately "discretionary." *Id.* at 958. In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, the Settlement Agreement proposes a $20,000 incentive award for each named plaintiff in this action, Messrs. Cabrales and Stanislaus, for a total of $40,000. (Doc. No. 179-1 at 29.) The aggregate amount of the proposed service awards represents less than one percent (1%) of the Maximum Service Amount. (*Id.*; Settlement ¶ 40.)

Plaintiff Cabrales has been a plaintiff in this case since October 2021, while Plaintiff Stanislaus has been involved since January 2022. They have assisted litigation in this case by responding to discovery requests, participating in depositions and an ENE, reviewing motions and documents, attending mediations, and maintaining regular communication with Class Counsel. (Stanislaus Decl. ¶ 4; Cabrales Decl. ¶ 4.) Cabrales states he has spent

21

over 100 hours on this case (Cabrales Decl. ¶ 5), while Stanislaus has spent approximately 80 hours on this case (Stanislaus Decl. ¶ 5). Moreover, courts in similar cases have held similar service awards to be reasonable. *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 plaintiffs, which combined for 0.3% of $25 million settlement); *Coates v. Farmers Grp., Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 16, 2016) (approving service award of $25,000 to two named plaintiffs); *In re: High-tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2014 WL 10520478, at *2 (N.D. Cal. May 16, 2014) (awarding each class representative $20,000 in employee case, amounting to just 0.4 percent of the total recovery).

Under these circumstances, the service award totaling $20,000 to each Class Representative is fair and reasonable in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class. The Court grants Plaintiffs' request for class representative incentive awards.

### ii. Vigorous Prosecution

As to the second aspect of the adequacy inquiry, Plaintiffs' counsel are experienced attorneys in employment litigation, including individual and class actions. (*See* Matern Decl. ¶¶ 45–52.) Plaintiffs and Class Counsel have demonstrated their ability to vigorously prosecute this action on behalf of the Class through conducting significant law-and-motion practice. The facts and the Parties' respective legal positions have been lengthily briefed in this Court. Class Counsel extensively investigated Plaintiffs' claims and Defendant's defenses, and conducted significant fact and expert discovery to enable them to fully evaluate the strengths and weaknesses of the claims and defenses raised by both sides. (*See* Doc. No. 179-1 at 25.) For example, Defendant produced over 4,000 pages of documents, including all relevant wage and hour policies and Settlement Class Members' timekeeping and payroll records. (*Id.*) Plaintiffs' counsel also retained three expert witnesses who submitted reports in support of Plaintiffs' motion for class certification. (*Id.*); *see In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements

22

that follow sufficient discovery and genuine arms-length negotiation are presumed fair."). Thus, pursuant to Rule 23(e), the court finds that Plaintiffs and their counsel will fairly and adequately protect the interests of the settlement classes. *See In re: Cathode Ray Tube (CRT) AntiTrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *8 (N.D. Cal. Mar 11, 2020) (concluding Rule 23(e)(2)(A) satisfied where "Plaintiffs have demonstrated that the representative parties and their counsel will fairly and adequately protect the interests of the [] Classes.").

### 2.    Arm's Length Negotiations

In reviewing the next Rule 23(e) factor, the Court must examine the Settlement for additional indicia of collusion that would undermine a prima facie arm's length negotiation. Signs of collusion may include (a) disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not awarded to revert to the defendants. *See Staton*, 327 F.3d at 965. If multiple indicia of implicit collusion are present, the district court has a heightened obligation to assure that fees are not unreasonably high. *Id.*

Here, that the settlement was reached with the assistance of experienced mediators further suggests that the settlement is fair and reasonable. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014) (noting that discovery and the use of a mediator "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)). The use of a mediator on two separate occasions to negotiate settlement and the exchange of discovery beforehand both support a conclusion that Plaintiffs were appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel. *See id*, 303 F.R.D. at 619–20.

Moreover, there is neither a clear sailing provision nor a reverter clause. (*See* Settlement ¶¶ 38, 39.) Moreover, settlement was achieved after extensive discovery, months of preparation and investigation, comprehensive mediation preparation, and hard-fought negotiations facilitated by two experienced mediators. (Doc. No. 179-1 at 12–13.)

23

There is no evidence or indication of collusion between the parties in reaching this Settlement. This factor weighs in favor of approval.

### 3.    Adequacy of Relief Provided to the Class

#### i.    Strength of Plaintiffs' Case and Costs, Risks, and Delay of Trial and Appeal

When assessing "the costs, risks, and delay of trial and appeal[,]" Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial[.]" *Hanlon*, 150 F.3d at 1026. "The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citation omitted).

Significant time and resources have already been dedicated to litigating this action. Motions for class certification and summary judgment have been ruled on by the Court, with the case settling after extensive discovery. *See Low*, 246 F. Supp. 3d at 1302 ("Where a case is near trial, and the parties have conducted extensive discovery and thoroughly litigated the issues, the extent of discovery and the stage of the proceedings weigh in favor of the proposed settlement.") (internal quotations and citation omitted). Plaintiffs note that while they "are confident in the merits of their claims, a legitimate controversy exists as to each cause of action." (Doc. No. 179-1 at 30.) Moreover, throughout this litigation, Defendant has also vigorously defended against each of Plaintiffs' claims "and can be expected to continue to do so if the case is not settled." (*Id.*) Thus, the risks of continuing this litigation are known to all involved. Accordingly, for preliminary approval purposes, this factor weighs in favor of settlement.

#### ii.    Effectiveness of Any Proposed Distribution Method

The court must also consider "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Basic to [the process of deciding whether a proposed settlement is fair, reasonable, and adequate] . . . is the need

21-cv-02122-AJB-DDL

to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968)). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

The papers make clear that the $4,500,000 "new funds" settlement amount will only be used to pay: (1) the submitted claims of the 1,203 Participating Settlement Class Members; (2) Phoenix, the Settlement Administrators; (3) any amounts that may be awarded as service representative fees; (4) the FLSA Amount; (5) the LWDA Payment; and (6) Class Counsel for any award of attorneys' fees, costs, and expenses incurred in this action. After all the proposed payments are deducted from the Settlement Fund, the remaining amount is estimated to be approximately $1,988,510.71. Each Participating Settlement Class Member will receive a payout on a pro rata basis based on weeks worked during the Class Period with an average gross Individual Settlement Payment of $1,652.96. (Settlement ¶¶ 38, 43.)

The Parties selected Phoenix to administer the settlement, and Defendant will provide Phoenix the names and addresses of the Class Members during the Class Period. Phoenix will determine each Class Member's share of the Net Settlement Amount on a pro rata basis according to the number of weeks the employee worked for Defendant during the Class Period. (*Id.*) Participating Settlement Class Members will not have to make a claim to receive a settlement payment. (Doc. No. 179-1 at 26.) Checks payable to the Settlement Class Members will remain negotiable for 120 days from the date of mailing, after which the checks will be void and the funds will be transferred by the Settlement Administrator to the Controller of the State of California Unclaimed Property Fund in the name of the Settlement Class Member. (*Id.*) The Court finds that this proposed method of distributing relief is effective for purposes of Rule 23(e).

25

### iii.    Proposed Award of Attorneys' Fees

The Settlement Agreement provides that Class Counsel will request attorneys' fees in the amount of $2,121,489.29, or one-third of the Maximum Settlement Amount. (Settlement ¶ 39.) Specifically, Class Counsel asserts the inclusion of the Direct Settlement Amount and the Retroactive Payment Amount in the Maximum Settlement Amount is justified for purposes of a fee award calculation based upon a "catalyst theory." (Doc. No. 179-1 at 27.)

As part of evaluating the settlement terms, the court must also consider "the terms of any proposed award of attorney's fees" to determine "whether the attorneys' fees arrangement shortchanges the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting in part Fed. R. Civ. Pro. 23(e)(2)(C)(iii)). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (internal quotation marks omitted).

In settlements such as this one that produce a common fund, courts may use either the lodestar method or percentage-of-recovery method to determine the reasonableness of attorney's fees. *In re Bluetooth*, 654 F.3d at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *Id.* However, a departure may be justified based on "special circumstances." *Id.*

Given that class counsel eventually will move separately for attorneys' fees and costs under Rule 23(h), the court need not determine at the preliminary approval stage whether a 33% award is reasonable. However, the inclusion of the Direct Settlement Amount and the Retroactive Payment Amount in the calculation of attorneys' fees "call[s] into question the fairness of the proposed settlement." *Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).

In the forthcoming Rule 23(h) motion, class counsel will be expected to fully substantiate the justification for an attorneys' fees award—especially a request exceeding the 25% benchmark and applying the Maximum Settlement Amount—addressing factors

26

such as "(1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2020 WL 6887749, at *10 (E.D. Cal. Nov. 24, 2020) (quotation omitted). Moreover, Class Counsel is expected to provide all billing information relevant to the motion.

In the motion for attorneys' fees, class counsel is welcome to adjust the proposed amount of attorneys' fees or provide further explanation for awarding fees above the typical 25% benchmark. Further justification is not necessary for purposes of preliminary approval of the settlement as any fees will be closely scrutinized as part of any future Rule 23(h) motion.

### 4.    Equitable Treatment of Class Members

As to the fourth and final Rule 23(e)(2) factor, the court examines whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class representatives and unnamed class members.

The Settlement Agreement does not overtly discriminate between any segments of the class, as it distributes monetary relief to all class members on a *pro rata* basis accounting for the number of compensable workweeks each class member worked for Defendant. (Settlement Agreement ¶ 43.) As summarized by counsel, and supported by the Settlement Agreement, the following formula determines the individual payments: [Workweeks worked by class member / Total Workweeks worked by all class members] × [Net Settlement Amount] = Class Member's Payment. (*Id.*) The Court finds this apportionment takes appropriate account of the differences between class members. *See Lopez v. Velocity Transport LLC*, No.: 22-cv-1414-RSH-KSC, 2024 WL 4957565, at *9 (S.D. Cal. Dec. 3, 2024) (approving distribution of net settlement amount "to Class

27

Members on a *pro rata* basis accounting for the number of workweeks worked by each Class Member"); *Carlino v. CHG Med. Staffing, Inc.*, No. 1:17-cv-01323-LHR-CDB, 2024 WL 1676461, at *12 (E.D. Cal. Apr. 18, 2024) (distributing net settlement amount, pro rata, based on number of workweeks is a "reasonable and impartial basis for allocating funds in a class wage and hour settlement"); *Grant v. T-Mobile USA, Inc.*, No. CV 21-2268-GW-JEMx, 2023 WL 7308311, at *7 (C.D. Cal. Oct. 3, 2023) (distributing "payments to the number of Work Weeks, *pro rata*, for purposes of the Wage & Hour Class's claims is an equitable method for treating the members of that Class"); *Gagnier v. Siteone Landscape Supply LLC*, No.: SACV 21-01834-CJC (DFMx), 2023 WL 8116831, at *9 (C.D. Cal. June 6, 2023) ("Individual settlement amounts are based on the pro rata share of workweeks that each individual class member was employed by Defendant, which is an appropriate proxy for the degree of harm that the individuals likely suffered due to Defendant's purported misconduct.").

Accordingly, this factor weighs in favor of approval.

## B.    Additional Ninth Circuit Factors

As the amended Rule 23(e)(2) factors were not intended to replace the factors developed by circuits, the Court now turns to analyze the remaining factors traditionally considered by this Circuit.[4] *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

### 1.    Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As such, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts

---

[4] There is no government actor present in the instant action. Thus, the Court finds that factor neutral and foregoes further analysis. *See Churchill Village, LLC v. General Electric*, 361 F.3d 566, 576 n.7 (9th Cir. 2004) ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted).

of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citation and internal quotation marks omitted).

Here, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). In addition to being familiar with the present dispute, Class Counsel has significant expertise in employment litigation. (*See* Matern Decl. ¶¶ 45–52.) This factor weighs in favor of approval.

### 2.    Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529).

At this preliminary approval stage, class members have yet to receive notice of settlement. Accordingly, the Court will revisit this factor with the subsequent motion for final approval of settlement.

For the above reasons, the court **GRANTS** the motion to preliminarily approve the Settlement Agreement as to the class claims under Rule 23(e).

### C.    Request for Settlement Administrator Cost

In the Settlement Agreement, Plaintiffs and Defendant agree that within sixty-one (61) calendar days of the Effective Date of the Settlement, Defendant will deposit the unpaid portion ($4,500,000) of the Maximum Settlement Amount into a Qualified Settlement Fund to be established by the Court-appointed Settlement Administrator. (Settlement ¶¶ 13, 37.) The Parties propose to have Phoenix Settlement Administrators serve as the Settlement Administrator. (*Id.* ¶ 33.) The Settlement Agreement states the Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Maximum Settlement Amount, not to exceed $35,000.00. (*Id.* ¶ 41.) The Court finds the estimated $35,000.00 Settlement

Administrator Fee reasonable.

### D.    Settlement of PAGA Penalties Claim

The SAC's Tenth Cause of Action asserts a claim for PAGA penalties, on behalf of Plaintiffs and all aggrieved employees, for the Labor Code violations asserted in the preceding class claims. (SAC ¶¶ 131–35.) As discussed at the outset, PAGA claims and their settlement are fundamentally distinct from the class claims discussed above. *See Hamilton v. Wal-Mart Stores*, 39 F.4th 575, 583 (9th Cir. 2022) ("Rule 23 class actions and PAGA actions are so conceptually distinct that class action precepts generally have little salience for PAGA actions."); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 852 (9th Cir. 2020) (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA suits"). As explained below, the current Settlement Agreement does not adequately account for the distinct nature and effect of the class claims versus the PAGA claim.

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of themselves and other current or former employees. Cal. Lab. Code § 2699(a). Indeed, "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees." *Kim v. Reins Int'l Cal. Inc.*, 9 Cal. 5th 73, 87 (2020). Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). "Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim." *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 541 n.5 (2021) (cleaned up). Thus, a PAGA plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to the public at large because "they act, as the statute's name suggests, as a private attorney general." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016). Under PAGA's remedial scheme, civil penalties recovered are distributed between "the aggrieved employees"

30

(25%) and the LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the court, and the proposed settlement must also be sent to the LWDA at the same time it is submitted to the court. *Id.* § 2699(l)(2).

While PAGA requires a trial court to approve a PAGA settlement, district courts have noted there is no governing standard to review PAGA settlements. *Sanchez v. Frito-Lay, Inc.*, No. 1:14cv797-DAD-BAM, 2019 WL 4828775, at *12 (E.D. Cal. Sept. 30, 2019) (acknowledging the "absence of authority governing the standard of review of PAGA settlements"). "'[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV 161701 JVS (SPx), 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017)). Consequently, some district courts have used the guidance provided by the LWDA in *O'Connor* in assessing the proposed settlement of the PAGA claims. *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); *Sanchez*, 2019 WL 4828775, at *12. In *O'Connor*, the LWDA commented,

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F. Supp. 3d at 1133. Based on LWDA's response in *O'Connor*, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." *Haralson*, 383 F. Supp. 3d at 972.

First, in accordance with the statutory requirements, Plaintiffs submitted the Settlement Agreement to the LWDA. (Matern Decl. ¶ 60; Doc. No. 179-9.)

Next, the Settlement Agreement provides for a $100,000.00 PAGA Penalty.

31

(Settlement ¶ 42.) This represents approximately 1% of the Maximum Settlement Amount. Further, the Settlement Agreement provides that 75% of the PAGA Penalty ($75,000.00) will be paid to the LWDA and 25% will be paid to the PAGA Representative Group ($25,000.00), in accordance with California Labor Code § 2699(i). Because the PAGA Members includes those individuals who previously entered into an individual settlement agreement with BAE through the Direct Settlement Campaign, there are a total of 2,582 eligible class members. Thus, the average payment to PAGA Representative Group Members is $9.68. *See Granados v. Hyatt Corp.*, No.: 23-cv-01001-H-VET, 2024 WL 3941828, at *2 (S.D. Cal. Aug. 26, 2024) (granting preliminary approval of class action settlement which included terms that "the estimated average PAGA payment to aggrieved employees is $5.17"); *Perez v. Bodycote Thermal Processing, Inc.*, No.: CV 22-00145 RAO, 2024 WL 4329057, at *8 (C.D. Cal. Aug. 23, 2024) (finding PAGA payments averaging $95.43, "with payments ranging from $3.48 to $366.68" fair, reasonable, and adequate); *North v. Superior Hauling & Fast Transit, Inc.*, No. EDCV 18-2564 JGB (KKx), 2020 WL 12967997, at *4 (C.D. Cal. May 29, 2020) (approving settlement that included PAGA average payout of $21.01). The Court finds that the Settlement Agreement's $100,000.00 PAGA penalty is reasonable, fundamentally fair, and adequate. *See Alcala v. Meyer Logistics, Inc.*, No. CV177211PSGAGRX, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA penalties between 0 and 2% of the gross settlement amount).

## VI. CONCLUSION

Accordingly, for the reasons stated herein, the Court enters the following orders.

- **Provisional Certification of Class**: The Court **GRANTS** Plaintiffs' motion for provisional class certification, for settlement purposes only, of the following settlement classes as set forth in the proposed Settlement Agreement:

  o (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the Class Period, (2) all current and former California based non-exempt employees of Acro Service

32

Corporation ("Acro") who were placed to work at BAE for at least one Workweek during the Class Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and June 1, 2024.

  o (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the FLSA Period, (2) all current and former California based non-exempt employees of Acro who were placed to work at BAE for at least one Workweek during the FLSA Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the FLSA Period.

- **Preliminary Approval of Settlement**: The Court finds, on a preliminary basis, that the Settlement (Doc. No. 179-8), incorporated by reference in full and made a part of this Order, appears fair, adequate, and within the range of reasonableness which could ultimately be given final approval by this Court. Accordingly, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. (Doc. No. 179.)

- **Class Counsel**: The Court **APPROVES** Plaintiffs' counsel, Matern Law Group, PC, as class counsel for settlement purposes;

- **Class Representatives**: The Court **APPROVES** named plaintiffs, Federico Cabrales and Tychicus Stanislas, as class representatives for settlement purposes;

- **Notice of Settlement**: The Court **APPROVES**, as to form and content, the Settlement Notice (Doc. No. 179-8 at 47–55) and finds it consistent with the requirements of Rule 23 and due process to provide the best practicable notice under the circumstances.

- **Settlement Administration**: The Court **APPOINTS** Phoenix Settlement Administrators as the Settlement Administrator to supervise and administer the

33

notice procedure in connection with the Settlement as well as the processing of claims as more fully set forth below.

- o <u>Within 20 calendar days of the entry of this Order</u>, BAE must provide or cause to be provided to Phoenix in electronic format, such as an Excel spreadsheet, (at no cost to the Settlement Fund, Class Counsel, or the Settlement Administrator) its Class List (consisting of names, addresses, telephone numbers, and Social Security numbers) of the Class Members and the respective number of Workweeks that each Settlement Class Member worked during the Class Period according to BAE's records;

- o <u>Within 21 calendar days after receiving the Class List from Defendant</u>, Phoenix must cause a copy of the Notice Packet, substantially as it appears in form at Doc. No. 179-8 at 47–55, to be mailed by first-class mail to all Settlement Class Members at the addresses set forth in the records provided by BAE or in the records which BAE caused to be provided, or who otherwise may be identified through further reasonable effort;

- o <u>Within 10 calendar days of entry of this Order</u>, Phoenix must cause copies of the Settlement Agreement and Notice Packet to be posted on its website.

- **Objections**:  Written Notices of Objection to the Settlement must be filed with the Court and submitted to Phoenix as set forth in the Settlement <u>no later than February 14, 2025</u>.

- **Final Approval Hearing**: The Court sets a Final Approval Hearing on <u>May 1, 2025 at 2:00 PM</u> in Courtroom 4A, of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101, to consider:

- o Whether the Settlement should be finally approved as fair, reasonable, and adequate; and

- o Class Counsel's application for attorneys' fees and expenses.

- **Other Filing Deadlines**: The Court **ORDERS** the following schedule for further proceedings:

  o The motion for final approval of class action settlement and motion for attorneys' fees and costs must all be filed <u>no later than February 28, 2025</u>.

    ▪ The motion for final approval **MUST INCLUDE AND ADDRESS** any Objections or responses received as of the filing date.

    ▪ As for the fee motion:

      • Class Counsel **MUST PROVIDE** documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled.

      • Class Counsel **MUST ADDRESS** the appropriateness of any upward or downward departure in the lodestar calculation, as well as reasons why a percentage-of-the-fund approach to awarding attorney fees may be preferable in this case and why any upward or downward departure from the 25% benchmark may be merited.

      • Class Counsel **MUST BE PREPARED** to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

**IT IS SO ORDERED.**

Dated: December 5, 2024

Hon. Anthony J. Battaglia
United States District Judge

21-cv-02122-AJB-DDL