MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
DALIA KHALILI (SBN 253840)
dkhalili@maternlawgroup.com
KIRAN PRASAD (SBN 255348)
kprasad@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
MATERN LAW GROUP, PC
2101 East El Segundo Boulevard, Suite 403
El Segundo, California 90245
Telephone: (310) 531-1900
Facsimile:  (310) 531-1901

Attorneys for Plaintiffs
FEDERICO CABRALES, TYCHICUS
STANISLAS, and the Certified Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO CABRALES, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:21-CV-02122-AJB-DDL<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  July 1, 2025<br>Time:  2:00 p.m.<br>Courtroom:  4A<br>Judge:  Hon. Anthony J. Battaglia<br><br>Complaint Filed:  October 26, 2021<br>FAC Filed:  January 20, 2022<br>SAC Filed:  August 12, 2022<br>Trial Date:  None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................ 1

    A.    The Parties .................................................................................................. 1

    B.    Background and Procedural History ........................................................... 2

    C.    Settlement Negotiations .............................................................................. 4

III.    SETTLEMENT SUMMARY ............................................................................. 5

    A.    Settlement Class Members .......................................................................... 5

    B.    FLSA Collective Members ......................................................................... 6

    C.    PAGA Members .......................................................................................... 7

    D.    Settlement Terms ........................................................................................ 7

          1.    Individual Settlement Payments. ..................................................... 8

          2.    Individual FLSA Payments. ............................................................. 8

          3.    LWDA Payment and Individual PAGA Payments. ........................... 9

          4.    Class Representative Enhancement Payments. .................................. 9

          5.    Attorneys' Fees and Costs. ............................................................... 9

          6.    Settlement Administration Costs. ..................................................... 9

    E.    Released Claims ........................................................................................ 10

    F.    Uncashed Checks ...................................................................................... 10

IV.    THE PROPOSED CLASS SETTLEMENT MERITS FINAL APPROVAL ........ 10

    A.    Legal Standard .......................................................................................... 10

    B.    Final Certification of the Settlement Class Should Be Granted ................. 11

    C.    Settlement Class Members Received Adequate Notice .............................. 11

1
2

## <u>TABLE OF CONTENTS</u> (Cont'd)

<u>Page</u>

3    D.    The Proposed Settlement Is Fair, Reasonable, and Adequate ..................... 12

4    1.    Plaintiffs and Class Counsel Have Adequately Represented the
5    Class ........................................................................................ 13

6    2.    The Settlement Is the Product of Arm's Length Negotiations .......... 13

7    3.    The Settlement Provides Adequate Relief for the Class.................... 14

8
9    a.    The Costs, Risks, and Delay of Further Litigation.................. 15

10    b.    The Effectiveness of the Proposed Method of Distributing
Relief.................................................................................... 17

11    c.    The Terms of the Proposed Award of Attorneys' Fees............ 17

12    d.    Any Agreement Required to Be Identified Under Rule
13    23(e)(3) ................................................................................ 20

14    4.    The Settlement Does Not Provide Any Preferential Treatment ......... 20

15    5.    Additional Ninth Circuit Factors .......................................... 21

16    a.    The Experience and Views of Counsel ................................... 21

17    b.    Class Members' Reaction to the Proposed Settlement............. 21

18    V.    THE FLSA SETTLEMENT SHOULD BE APPROVED ..................................... 22
19
20    VI.    THE PAGA SETTLEMENT SHOULD BE APPROVED ..................................... 23

21    VII.    THE ADMINISTRATION COSTS SHOULD BE APPROVED........................... 25

22    VIII.    CONCLUSION.................................................................................... 25

23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Alcala v. Meyer Logistics, Inc.*,
2019 WL 4452961 (C.D. Cal. June 17, 2019) ...............................................24

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ...............................................25

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ................................................................23

*Briseño v. Henderson*,
998 F.3d 1014 (9th Cir. 2021) ....................................................................13

*Burns v. Elrod*,
757 F.2d 151 (7th Cir. 1985) ......................................................................11

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....................................................................11

*Castro v. Paragon Indus., Inc.*,
2021 WL 2042333 (E.D. Cal. May 21, 2021) ..........................................9, 22

*Chu v. Wells Fargo Invs., LLC*,
2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ...............................................24

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ......................................................................13

*de Cabrera v. Swift Beef Co.*,
2020 WL 13585929 (C.D. Cal., Nov. 23, 2020) ..........................................24

*Gagnier v. Siteone Landscape Supply LLC*,
2023 WL 8116831 (C.D. Cal. June 6, 2023) ...............................................20

*Garcia v. Gordon Trucking, Inc.*,
2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ..............................................24

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..............................................................10, 17

# <u>TABLE OF AUTHORITIES</u> (Cont'd)

<u>Page(s)</u>

*Hendricks v. StarKist Co.*,
2015 WL 4498083 (N.D. Cal. July 23, 2015) ............................................................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................................................18

*In re Heritage Bond Litig.*,
546 F.3d 667 (9th Cir. 2009) ....................................................................................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ....................................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................................................................................13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................15

*In re Pac. Enter. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ......................................................................................21

*Kim v. Allison*,
8 F.4th 1170 (9th Cir. 2021) ...............................................................................12, 13

*Maciel v. Bar 20 Dairy, LLC*,
2020 WL 5095885 (E.D. Cal., Aug. 28, 2020) ..........................................................15

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ....................................................................................22

*Morales v. Stevco, Inc.*,
2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ............................................................21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................................22

*O'Connor v. Uber Techs., Inc.*,
201 F. Supp. 3d 1110 (N.D. Cal. 2016) ....................................................................24

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................................................................11

1

## <u>TABLE OF AUTHORITIES</u> (Cont'd)

2
<u>Page(s)</u>

3
*Robinson v. Kimbrough,*

4
    652 F.2d 458 (5th Cir. 1981) ........................................................................18

5
*Rodriguez v. West Publ'g Corp.,*

6
    563 F.3d 948 (9th Cir. 2009) ..........................................................13, 17, 21

7
*Satchell v. Fed. Express Corp.*

    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007). ..............................................13

8
*Selk v. Pioneers Mem'l Healthcare Dist.,*

9
    159 F. Supp. 3d 1164 (S.D. Cal. 2016)..........................................................22

10
*Staton v. Boeing Co.,*

11
    327 F.3d 938 (9th Cir. 2003) ........................................................................21

12
*Viceral v. Mistras Group, Inc.,*

13
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ..............................................15

14
*Viceral v. Mistras Group, Inc.,*

15
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ..............................................6, 24

16
*Zamora Jordan v. Nationstar Mortg., LLC,*

17
    2019 WL 1966112 (E.D. Wash. May 2, 2019)..............................................17

18
### <u>State Cases</u>

19
*Californians for Responsible Toxics Mgmt. v. Kizer,*

20
    211 Cal. App. 3d 961 (1989) ........................................................................19

21
*Graham v. DaimlerChrysler Corp.,*

22
    34 Cal. 4th 553 (2004) ..........................................................................18, 19

23
*Laffitte v. Robert Half Int'l Inc.,*

    231 Cal. App. 4th 860 (2014) ......................................................................20

24
*Moniz v. Adecco USA, Inc.,*

25
    72 Cal. App. 5th 56 (2021) ..........................................................................23

26
*Naranjo v. Spectrum Sec. Servs., Inc.,*

27
    15 Cal. 5th 1056 (2024) ..............................................................................16

28

# TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Turrieta v. Lyft, Inc.*,
  16 Cal. 5th 664 (2024) ......................................................................................23

**Federal Statutes**

28 U.S.C. § 1331 ...................................................................................................2

28 U.S.C. § 1441(a) ..............................................................................................2

28 U.S.C. § 1442(a)(1) ..........................................................................................2

29 U.S.C. § 201 .....................................................................................................3

**State Statutes**

Cal. Lab. Code § 2699(e)(2) ...............................................................................16

Cal. Lab. Code § 2699(s)(2) ...............................................................................23

**Federal Rules**

Fed. R. Civ. P. 23 ...............................................................................12, 22, 24

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................11

Fed. R. Civ. P. 23(e) ..............................................................................10, 12, 17

Fed. R. Civ. P. 23(e)(1) .......................................................................................11

Fed. R. Civ. P. 23(e)(2) ..........................................................................12, 14, 20

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................13

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...........................................................................20

Fed. R. Civ. P. 23(e)(3) ...............................................................................14, 20

Fed. R. Civ. P. 30(b)(6) ...............................................................................14, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On December 5, 2024, this Court granted preliminary approval of the Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement")[1] between Plaintiffs Federico Cabrales and Tychicus Stanislas ("Plaintiffs") and Defendant BAE Systems San Diego Ship Repair Inc. ("BAE" or "Defendant").  Doc. No. 181.  Plaintiffs now seek an order granting final approval of the Settlement.

The Settlement creates a non-reversionary settlement fund in the amount of $6,364,467.87 including $4,500,000 of new funds plus a credit for (1) $1,502,955.87 paid by BAE to Settlement Class Members in individual settlements and (2) $361,512 paid by BAE to Settlement Class Members in March 2023 for underpaid meal and rest period premiums.  The Settlement will yield an estimated average gross Individual Settlement Payment of **$1,721.17** to Participating Settlement Class Members and an estimated highest gross Individual Settlement Payment of **$9,919.61**.  The reaction of the Settlement Class to the Settlement has been overwhelmingly positive as ***zero*** Settlement Class Members have objected or opted out.

The Settlement was reached through mediated, arm's length negotiations and sufficient investigation and discovery allowed Class Counsel to act intelligently.  For the above reasons, and balancing the substantial benefits to the Settlement Class with the risks and expense of further litigation, the proposed Settlement is fair, reasonable, and adequate.

Accordingly, Plaintiffs respectfully request that the Court grant this motion.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    <u>The Parties</u>

BAE provides ship repair, maintenance, and upgrade services to ships in San Diego

---

[1] The Settlement Agreement is attached to the Declaration of Matthew W. Gordon in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Gordon Decl.") as Exhibit 2.

County, including at its shipyard located at 2205 East Belt Street, San Diego, California 92113.  Gordon Decl. ¶ 3.

Plaintiff Federico Cabrales ("Cabrales") initially worked for BAE for approximately four years through a staffing agency, NSC Technologies, LLC ("NSC"), until BAE hired him as a direct employee in January 2018.  Declaration of Federico Osuna Cabrales ("Cabrales Decl.") ¶ 3.  Cabrales worked as a non-exempt employee of BAE in San Diego until July 2021.  *Id.*  His position was a "helper."  *Id.*

Plaintiff Tychicus Stanislas ("Stanislas") initially worked for BAE for approximately six years through NSC until BAE hired him as a direct employee in July 2018.  Declaration of Tychicus Stanislas ("Stanislas Decl.") ¶ 3.  Stanislas worked as a non-exempt employee of BAE in San Diego until March 2019.  *Id.*  His position was a shipfitter.  *Id.*

### B. <u>Background and Procedural History</u>

Plaintiff Cabrales filed this action on October 26, 2021 in San Diego Superior Court. Gordon Decl. ¶ 6.  BAE removed the action to this Court on December 23, 2021, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1442(a)(1).  Doc. No. 1.

On January 20, 2022, Plaintiff Cabrales filed a First Amended Complaint ("FAC") adding Plaintiff Stanislas as a named plaintiff.[2]  Doc. No. 9.

On August 8, 2022, the Court granted in part Defendant's motion to dismiss Plaintiffs' FAC with leave to amend.  Doc. No. 20.  On August 12, 2022, Plaintiffs filed the operative Second Amended Complaint ("SAC").  Doc. No. 21.  The SAC alleges the following claims: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages to Discharged and Quitting Employees; (6) Failure

---

[2] The FAC also included Tony Fuga and Steven Whidbee as plaintiffs.  The Court subsequently granted the parties' joint motion to dismiss Steven Whidbee with prejudice because he signed a prior release with a related entity.  Doc. No. 36.  On June 28, 2023, the Court granted in part BAE's motion to dismiss Tony Fuga with prejudice.  Doc. No. 101.

to Furnish Accurate Itemized Wage Statements; (7) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (8) Unfair and Unlawful Business Practices; (9) Failure to Pay Straight and Overtime Compensation in Violation of 29 U.S.C. § 201 et seq.; and (10) Penalties Under the Labor Code Private Attorneys General Act ("PAGA"), as a Representative Action. *Id.*

On November 17, 2023, BAE mailed out a packet to putative class members containing a cover letter, a copy of the SAC, Plaintiffs' notice to the Labor and Workforce Development Agency ("LWDA"), a Release of Claims, Frequently Asked Questions, a self-addressed stamped envelope, and a settlement check. Doc. No. 145 at 2.

On December 5, 2023, Plaintiffs filed an ex parte application for an order (1) prohibiting BAE from further communications with putative class members regarding the claims at issue in the case, and (2) requiring BAE to provide Plaintiffs' counsel with the identity and contact information for all putative class members to whom BAE sent settlement communications and who have purportedly released their claims by signing the settlement check and/or release. Doc. No. 141.

On December 6, 2023, the Court issued an order (1) granting in part and denying in part Defendant's motion for partial summary judgment, and (2) granting in part and denying in part Plaintiffs' motion for class certification. Doc. No. 142. The Court granted summary judgment in favor of BAE on Plaintiffs' state law claims as they apply to work performed at Naval Base San Diego, known as 32nd Street, and at Naval Air Station North Island due to the federal enclave doctrine. *Id.* at 17. The Court granted class certification as to the following subclasses: (1) Minimum Wage Security Subclass; (2) Overtime Security Subclass; (3) Rounding Minimum Wage Security Subclass; (4) Rounding Overtime Subclass; (5) Overtime Regular Rate of Pay Subclass; (6) Meal Break Subclass (to the extent it is based upon whether Defendant provided late first meal breaks); (7) Second Meal Break Subclass (to the extent it is based upon whether Defendant denied second meal breaks altogether); and (8) Wage Statement Subclass. *Id.* at 40. The Court further certified derivative claims for failure to pay final wages, waiting time penalties,

failure to furnish accurate wage statements, and unfair and unlawful business practices as they relate to the subclasses and underlying claims that were certified. *Id*. at 38-39.

The Court denied class certification with leave to amend as to the following subclasses: (1) Meal Break Subclass (to the extent it is based upon whether BAE failed to provide employees with full meal breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (2) Rest Break Subclass (to the extent it is based upon whether BAE failed to provide employees with full rest breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (3) Reimbursement Cellphone Subclass; and (4) Reimbursement Personal Protective Gear and Tools/Equipment Subclass. *Id*. at 41.

On December 12, 2023, the Court entered an order granting in part and denying in part Plaintiffs' ex parte application. Doc. No. 145. The Court ordered BAE to provide to Plaintiffs' counsel the identity and contact information for those individuals to whom BAE sent settlement communications and who have purportedly released their claims by signing a settlement check and/or the release. *Id*. at 8. The Court further ordered a "corrective letter" be sent to putative class members explicitly instructing them that they have more time to consider the settlement offer, discuss it with Plaintiffs' counsel, and either complete the settlement or withdraw their prior release as they choose. *Id*. On January 24, 2024, a third-party administrator mailed the corrective letter to class members who were sent the November 17, 2023 settlement packet. Gordon Decl. ¶ 14.

BAE paid the total gross amount of $1,502,955.87 in individual settlement payments through the November 17, 2023 direct settlement campaign. Gordon Decl. ¶ 15; Doc. No. 179-7 at ¶¶ 2-3. Approximately 1,379 individuals who were sent the November 17, 2023 settlement communication by BAE cashed the settlement check and/or signed a release of the claims at issue in this action, for an estimated average payment of $1,089.89 per Settlement Class Member. Gordon Decl. ¶¶ 16-17.

### C.    <u>Settlement Negotiations</u>

The parties attended an Early Neutral Evaluation conference on December 1, 2022.

*Id*. ¶ 20.  The case did not settle.  *Id*.  The parties also attended an unsuccessful private mediation with Jeffrey Krivis on December 23, 2022.  *Id*. ¶ 21.

After the Court granted class certification, the parties agreed to explore potential resolution again and participated in an in-person, private mediation with Hunter Hughes at the offices of Defendant's counsel on February 16, 2024.  *Id*. ¶ 22.  After the mediation, on February 19, 2024, Mr. Hughes made a mediator's proposal outlining the material terms of a proposed class action settlement.  *Id*. ¶ 23.  The parties did not accept the proposal but continued to negotiate the terms of a proposed Memorandum of Understanding ("MOU").  *Id*.  On March 11, 2024, the parties fully executed the MOU, which called for the parties to enter into a long-form settlement agreement.  *Id*. ¶ 24.  After months of further negotiations, the parties fully executed the Settlement on October 21, 2024.  *Id*. ¶ 25, Ex. 2 ("Settlement").

## III.    SETTLEMENT SUMMARY

### A.    Settlement Class Members

"Settlement Class Members" means (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the Class Period, (2) all current and former California based non-exempt employees of Acro Service Corporation ("Acro") who were placed to work at BAE for at least one Workweek during the Class Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the Class Period.  Settlement ¶ 34.  "Class Period" means the period from October 26, 2017 through June 1, 2024.[3]  *Id*. ¶ 6.

"Participating Settlement Class Members" means all Settlement Class Members who (1) do not submit a timely and valid Request for Exclusion and (2) did not previously

---

[3] The Class Period for employees placed to work at BAE by NSC starts on August 9, 2021 because of a prior settlement involving NSC employees in *Arthur Thompson v. NSC Technologies, LLC, et al.*, Case No. 3:20-cv-00371-JLS(MSB), which released claims through August 8, 2021.  Settlement ¶ 34.

settle the alleged claims at issue in the Action through an individual settlement agreement with BAE, including but not limited to through the November 17, 2023 direct settlement campaign. *Id.* ¶ 23.

There are 2,436 Settlement Class Members,[4] including 1,274 individuals with zero class Workweeks who participated in the November 17, 2023 direct settlement campaign or otherwise directly settled the claims at issue in the lawsuit.[5] Declaration of Mayra J. Gonzalez of Phoenix Settlement Administrators ("Gonzalez Decl.") ¶ 3. There are 1,162 Participating Settlement Class Members who worked a total of 67,946 Workweeks during the Class Period. Gonzalez Decl. ¶ 11. Those Settlement Class Members who previously settled the claims at issue in the action through an individual settlement agreement will not be eligible to receive an additional Individual Settlement Payment as part of this Settlement for the period of time they were a BAE direct-hire employee, but they will receive an Individual FLSA Payment and an Individual PAGA Payment if they qualify for those payments.[6] Settlement ¶¶ 10, 20, 44-45.

### B.    FLSA Collective Members

"FLSA Collective Members" means (1) all current and former California based

---

[4] In Plaintiffs' Motion for Preliminary Approval, Plaintiffs estimated that there are approximately 2,582 Settlement Class Members based on information provided by BAE's counsel. Gordon Decl. ¶ 19. However, after the Class List was provided to the Settlement Administrator, BAE's counsel informed Plaintiffs' counsel that some of the Settlement Class Members had been double counted if, during the Class Period, they worked at BAE through a staffing company and later were directly hired by BAE. *Id.* As a result, the actual number of Settlement Class Members is 2,436. *Id.*

[5] Approximately 105 of the 1,379 BAE direct-hire employees who entered into an individual settlement agreement with BAE nevertheless remain Participating Settlement Class Members, according to BAE's counsel, because the individual settlement agreements did not release claims covering the period of time when the direct-hire employees formerly worked at BAE through a staffing company. Gordon Decl. ¶ 16. Therefore, the number of Settlement Class Members with zero class Workweeks in the Class Period is 1,274 instead of 1,379. *Id.*

[6] The scope of the release entered into by Settlement Class Members who accepted an individual settlement with BAE through the November 17, 2023 direct settlement campaign excluded claims under PAGA and the FLSA. *See* Doc. No. 141-3.

non-exempt employees of BAE who worked at least one Workweek during the FLSA Period, (2) all current and former California based non-exempt employees of Acro who were placed to work at BAE for at least one Workweek during the FLSA Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the FLSA Period. *Id*. ¶ 10. "FLSA Period" means the period from January 20, 2019 through June 1, 2024. *Id*. ¶ 12.

The definition of "FLSA Collective Members" includes those individuals who previously entered into an individual settlement agreement with BAE through the November 17, 2023 direct settlement campaign. *Id*. ¶ 10. There are 2,158 FLSA Collective Members who worked a total of 202,511 FLSA Workweeks during the FLSA Period. Gonzalez Decl. ¶ 15.

## C.    **PAGA Members**

"PAGA Members" means (1) all current and former California based non-exempt employees of BAE who worked at least one Workweek during the PAGA Period, (2) all current and former California based non-exempt employees of Acro who were placed to work at BAE for at least one Workweek during the PAGA Period, and (3) all current and former California based non-exempt employees of NSC who were placed to work at BAE for at least one Workweek between August 9, 2021 and the end of the PAGA Period. *Id*. ¶ 20. "PAGA Period" means the period from November 16, 2020 through June 1, 2024. *Id*. ¶ 21.

"PAGA Members" includes those individuals who previously entered into an individual settlement agreement with BAE through the November 17, 2023 direct settlement campaign. *Id*. ¶ 48. There are 2,025 PAGA Members who worked a total of 151,951 PAGA Workweeks during the PAGA Period. Gonzalez Decl. ¶ 14.

## D.    **Settlement Terms**

The Settlement provides for a non-reversionary Maximum Settlement Amount ("MSA") of $6,364,467.87, which includes $4,500,000.00 in new funds plus (1) the gross

amount ($1,502,955.87) BAE paid to Settlement Class Members through the November 17, 2023 direct settlement campaign ("Direct Settlement Amount") and (2) the gross amount ($361,512) that BAE paid to Settlement Class Members through retroactive "true-up" payments issued on March 16, 2023 for underpaid meal and rest period premiums ("Retroactive Payment Amount").[7]  Settlement ¶ 16.  BAE shall receive a credit for the Direct Settlement Amount and the Retroactive Payment Amount such that the total amount of additional funds BAE will be required to pay in connection with the Settlement is $4,500,000 plus the employer's portion of payroll taxes of that sum as allocated to wages for Settlement Class Members and FLSA Collective Members.  *Id.*

The Net Settlement Amount is the amount remaining from the MSA after applying the credit BAE has already paid to Settlement Class Members for the Direct Settlement Amount and the Retroactive Payment Amount and deducting the Class Representative Enhancement Payments, the Class Counsel Award, the Settlement Administration Costs, the FLSA Amount, and the LWDA Payment.  *Id.* ¶ 17.  The entire Net Settlement Amount will be distributed to Participating Settlement Class Members with no reversion.  *Id.*

Subject to Court approval, the MSA shall be allocated as follows:

1.    <u>Individual Settlement Payments</u>.  The Net Settlement Amount will be distributed to each Participating Settlement Class Member on a pro rata basis according to the number of Workweeks he or she worked for BAE (or, if an employee of a staffing company, the number of Workweeks that person was placed to work at BAE) during the Class Period.  *Id.* ¶ 43.

2.    <u>Individual FLSA Payments</u>.  The FLSA Amount ($15,000) will be divided among FLSA Collective Members on a pro rata basis according to the number of Workweeks worked for BAE (or, if an employee of a staffing company, the number of

---

[7] On March 16, 2023, BAE issued "true-up" payments to Settlement Class Members in the aggregate gross amount of $361,512 for underpaid meal and rest period premiums as a result of BAE's unlawful policy of paying premiums at the base hourly rate rather than the regular rate of pay.  Gordon Decl. ¶ 18; Doc. No. 113-1 at 23:1-7; Doc. No. 128 at 27:6-17, Graham Dep. 131:10-132:2.

Workweeks that person was placed to work at BAE) during the FLSA Period. *Id.* ¶¶ 11, 45. FLSA Collective Members will be instructed that, if they cash the check for an Individual FLSA Payment, they will be deemed to have opted in as of the filing of the claim on January 20, 2022 and are releasing the Released FLSA Claims. *Id.* ¶ 11. *See Castro v. Paragon Indus., Inc.*, 2021 WL 2042333, at *8 (E.D. Cal. May 21, 2021) (granting final approval of settlement with similar procedure).

   3. <u>LWDA Payment and Individual PAGA Payments</u>. $100,000 of the MSA will be allocated to the resolution of PAGA Members' claims arising under PAGA during the PAGA Period (the "LWDA Payment"). Settlement ¶ 15. Pursuant to PAGA, $75,000 of the LWDA Payment will be paid to the LWDA, and $25,000 will be divided among PAGA Members on a pro rata basis according to the number of Workweeks worked for BAE (or, if an employee of a staffing company, the number of Workweeks that person was placed to work at BAE) during the PAGA Period. *Id.* ¶¶ 15, 44.

   4. <u>Class Representative Enhancement Payments</u>. Concurrently with this motion, Plaintiffs will apply to the Court for the award of Class Representative Enhancement Payments not to exceed $20,000 each, for a total of $40,000, for their time and effort in litigating the Action, the risks they undertook on behalf of the Settlement Class, and for their general release of all known and unknown claims. *Id.* ¶ 40. The Class Representative Enhancement Payments will be paid from the MSA and will be in addition to Plaintiffs' other individual settlement payments. *Id.*

   5. <u>Attorneys' Fees and Costs</u>. Concurrently with this motion, Class Counsel will apply to the Court for attorneys' fees in the amount of $2,121,489.29, or one-third (1/3) of the MSA including the Direct Settlement Amount and the Retroactive Payment Amount, pursuant to the common fund method, plus litigation expenses not to exceed $200,000. *Id.* ¶ 39.

   6. <u>Settlement Administration Costs</u>. For the reasonable costs of administration of the Settlement and the distribution of payments, the Settlement Administrator, Phoenix Settlement Administrators ("Phoenix"), will be paid from the

1    MSA in an amount not to exceed $35,000.  *Id*. ¶ 41.

2        **E.    Released Claims**

3        Upon the funding of the MSA, Participating Settlement Class Members will release

4    and discharge the Released Parties from all Released Class Claims arising during the Class

5    Period.  *Id*. ¶¶ 26, 29, 58-59.

6        By signing and cashing their settlement check, FLSA Collective Members shall

7    consent to opt in to the collective action and will release and discharge the Released Parties

8    from the Released FLSA Claims during the FLSA Period.  *Id*. ¶¶ 27, 29, 60.

9        Upon the funding of the MSA, PAGA Members will release and discharge the

10   Released Parties from the Released PAGA Claims during the PAGA Period.  *Id*. ¶¶ 28,

11   29, 61.

12       Plaintiffs will release the Released Parties from any and all claims, known or

13   unknown, through the date of execution of the Agreement.  *Id*. ¶ 62.

14       **F.    Uncashed Checks**

15       Any funds payable to Settlement Class Members whose checks are not cashed

16   within 120 calendar days after mailing will be promptly transferred by the Settlement

17   Administrator to the California State Controller's Office Unclaimed Property Fund in the

18   name of the Settlement Class Member.  *Id*. ¶ 66.

19   **IV.   THE PROPOSED CLASS SETTLEMENT MERITS FINAL APPROVAL**

20       **A.    Legal Standard**

21       Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues,

22   or defenses of a certified class may be settled, voluntarily dismissed, or compromised only

23   with the court's approval."  Fed. R. Civ. P. 23(e).  Before a court approves a settlement, it

24   must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re*

25   *Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009).  Generally, the district court's

26   review of a class action settlement is "extremely limited."  *Hanlon v. Chrysler Corp.*, 150

27   F.3d 1011, 1026 (9th Cir. 1998).  The court considers the settlement as a whole, rather

28   than its components, and lacks authority to "delete, modify or substitute certain

provision." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)).

### B.    Final Certification of the Settlement Class Should Be Granted

The Court previously certified after full briefing most of the claims to be released by the Settlement Class. Doc. No. 142. In its order granting preliminary approval, the Court provisionally certified the Settlement Class and Plaintiffs' remaining claims for failure to provide meal and rest periods and failure to reimburse necessary expenditures. Doc. No. 181 at 15:24-27. Therefore, for the same reasons that the Court granted provisional certification, final certification of the Settlement Class should be granted.

### C.    Settlement Class Members Received Adequate Notice

Before a court may grant final approval of a proposed class action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The "best notice practicable" does not require receipt of actual notice by all class members, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

The notice plan, as approved by the Court, has been implemented by Phoenix, the Settlement Administrator. Phoenix received the Class List information for 2,436 individuals identified as Settlement Class Members. Gonzalez Decl. ¶ 3. Phoenix updated the Class List by conducting a National Change of Address search. *Id.* ¶ 4. On March 18,

2025, Phoenix mailed Notice Packets, in English and Spanish, to all 2,436 Settlement Class Members via first class U.S. Mail. *Id.* ¶ 5. To date, zero Notice Packets have been returned to Phoenix as undeliverable. *Id.* ¶ 7. No Settlement Class Members have requested to be excluded from the Settlement or submitted a Notice of Objection to Phoenix. *Id.* ¶¶ 8-9. Phoenix received one Workweek dispute from a Settlement Class Member, which was resolved. *Id.* ¶ 10. The deadline to submit a Request for Exclusion, a Notice of Objection, or a Workweek dispute was April 17, 2025. *Id.* ¶¶ 8-10. Therefore, the total number of Settlement Class Members is 2,436, and the total number of Participating Settlement Class Members is 1,162, after deducting those Settlement Class Members with zero class Workweeks who previously settled the alleged claims at issue in the Action through an individual settlement agreement with BAE, including but not limited to through the November 17, 2023 direct settlement campaign. *Id.* ¶ 11.

In sum, the Settlement Administrator duly effectuated the court-approved notice plan, and Settlement Class Members received adequate notice of the Settlement in compliance with Rule 23 and the requirements of due process.

### D. <u>The Proposed Settlement Is Fair, Reasonable, and Adequate</u>

To approve a settlement that would bind class members, the court must find that it is "fair, reasonable, and adequate" after considering whether: (A) "the class representatives and class counsel have adequately represented the class;" (B) "the proposal was negotiated at arm's length;" (C) "the relief provided for the class is adequate;" and (D) "the proposal treats class members equitably relative to each other." Fed R. Civ. P. 23(e)(2).

In the Ninth Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors": "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members to the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citing *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Rule 23(e) also requires a district court to consider the terms of any proposed award of attorneys' fees and to "scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair." *Kim*, 8 F.4th at 1179 (citing *Briseño v. Henderson*, 998 F.3d 1014, 1024-25 (9th Cir. 2021).

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Class

The Ninth Circuit applies a two-pronged test to determine whether the representative parties will adequately represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) have the named plaintiffs and their counsel prosecuted the action vigorously on behalf of the class? *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000). This Court previously determined that, pursuant to Rule 23(e)(2)(A), "Plaintiffs and their counsel will fairly and adequately protect the interests of the settlement classes." Doc. No. 181 at 23:2-3.

Because Plaintiffs and Class Counsel have adequately represented the Settlement Class, this factor supports final approval of the Settlement.

### 2. The Settlement Is the Product of Arm's Length Negotiations

Evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the settlement is fair. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, the Settlement was reached after extensive negotiations, including an ENE and two private mediations. Gordon Decl. ¶¶ 20-22. Plaintiffs and their counsel were able to make an informed decision regarding settlement, given the significant discovery and investigation conducted prior to resolving the case. *Id*. ¶¶ 26-28. After the SAC was filed, the parties completed extensive fact and expert discovery. *Id.* ¶ 26. Plaintiffs propounded multiple sets of written discovery and responded to requests for production of documents and interrogatories. *Id*. BAE produced over 4,000 pages of documents, including all

relevant wage and hour policies and Settlement Class Members' timekeeping and payroll records through October 23, 2022. *Id*. The timekeeping records contained electronic data for approximately 1,094,198 shifts worked by Settlement Class Members, including both direct hires of BAE and employees working through NSC and Acro. *Id*. Plaintiffs took the deposition of three witnesses designated by BAE pursuant to Fed. R. Civ. P. 30(b)(6). *Id*. BAE took Plaintiff Cabrales' deposition on April 13, 2023 and May 10, 2023 and Plaintiff Stanislas's deposition on April 11, 2023. *Id*. Class Counsel interviewed dozens of Settlement Class Members and obtained declarations from thirteen Settlement Class Members, in addition to Plaintiffs, in support of the motion for class certification. *Id*.

Plaintiffs' counsel retained three expert witnesses who submitted reports in support of Plaintiffs' motion for class certification. *Id*. ¶ 27; Doc. No. 113-2, Ex. E, F, G. In addition, Plaintiffs' counsel conducted a site inspection at BAE's shipyard located at 2205 East Belt Street with Brian Grieser, an expert in time and motion studies in workplace settings. *See* Doc. No. 113-2 at 81-98. Plaintiffs took the deposition of Defendant's expert, J. Michael DuMond, a labor economist who analyzed the timekeeping and payroll data of putative class members. Gordon Decl. ¶ 27. Prior to mediation, Plaintiffs' counsel prepared a damages model which was based, in part, on Plaintiffs' expert analysis of the time and payroll records and extrapolation to the end of the class period. *Id*.

Based on the information and record developed through investigation and discovery, Plaintiffs' counsel was able to act intelligently and effectively in negotiating the proposed Settlement. *Id*. at ¶ 28.

The Court previously found that "[t]here is no evidence or indication of collusion between the parties in reaching this Settlement." Doc. No. 181 at 24:1-2. There is no "clear sailing" provision and no reversion of funds to Defendant. *Id*. at 23:25-26. Thus, this factor supports a finding that the Settlement is fair, reasonable, and adequate.

### 3. The Settlement Provides Adequate Relief for the Class

The third Rule 23(e)(2) factor considers whether the relief provided to the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

Based on an estimated Net Settlement Amount of $2,008,741.02, the average gross Individual Settlement Payment paid to Participating Class Members will be approximately **$1,721.17**, and the highest gross Individual Settlement Payment will be **$9,919.61**. Gonzalez Decl. ¶¶ 12-13; Gordon Decl. ¶ 30.  The estimated Net Settlement Amount represents approximately 9.2% ($2,008,741.02 ÷ $21,822,755.00 = .092) of the maximum potential value of the class claims, including the uncertified claims, and approximately 17.7% ($2,008,741.02 ÷ $11,364,260 = 0.177) of the value of Class Counsel's discount of those claims.  Gordon Decl. ¶ 30.  This is a substantial recovery for the Participating Settlement Class Members, which takes into consideration the significant risks of proceeding with the litigation and is well "within the range of the percentage recoveries that California district courts … have found to be reasonable[.]"  *Maciel v. Bar 20 Dairy, LLC*, 2020 WL 5095885, at *14 (E.D. Cal., Aug. 28, 2020) (approving *gross* settlement amount representing approximately 5% of the maximum recovery); *see also Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016) (91.2% discount on verdict value of class claims is reasonable given risks); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement of about 6% of the estimated maximum recovery after deducting fees and costs).

Considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the Settlement Class is adequate.

### a.  *The Costs, Risks, and Delay of Further Litigation*

In reaching a decision to settle this case, Plaintiffs' counsel considered the risks of proceeding with the litigation, including: (a) the potential difficulties managing the action, including maintaining certification of the class through trial, and obtaining certification of

the previously uncertified claims in a renewed motion for class certification; (b) the merits of the defenses raised by BAE; (c) the expense and delay of continued litigation and the likely resulting reduction in recovery for class members; (d) the risk and uncertainty of proving liability, damages, and PAGA penalties at trial; (e) the prospect that the Court could substantially reduce any award of civil penalties on the grounds that "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory," pursuant to Labor Code § 2699(e)(2); and (f) the risk that either party would appeal an unfavorable judgment.  Doc. No. 179-4 at ¶ 30.

While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action.  *Id.* ¶¶ 29-39.  For example, BAE contends that its written policies complied with California law and none of Plaintiffs' claims have any merit.  *Id.* ¶ 34.  Furthermore, BAE argues that Plaintiffs cannot represent temporary workers assigned to work at BAE because Plaintiffs cannot prove BAE is a joint employer.  *Id.*  BAE argues it supplied tools, personal protective equipment, and radios to those employees who required them, and provided allowances for boots and tools to certain workers.  *Id.*  BAE contends that its horn system gave employees a five-minute warning so they had time to get to the break area in advance of the meal period, and employees were not expected to be at their work stations until after the final horn sounded.  *Id.*  BAE contends that its rounding policy was facially neutral and therefore lawful.  *Id.*  BAE argues that it paid meal and rest period premiums if an employee reported being unable to take a break due to work obligations.  *Id.*  BAE contends employees without bags did not undergo security checks at all and security bag checks ended in approximately April 2020.  *Id.*  Finally, BAE will surely contend that any failure to pay all wages due to employees upon separation was not "willful," and any failure to provide accurate itemized wage statements was not "knowing and intentional."  *See Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056, 1065 (2024) ("if an employer reasonably and in good faith believed it was providing a complete and accurate wage statement in compliance with the requirements of section 226, then it has not knowingly and intentionally failed to comply with the wage statement

law"). Indeed, there was a serious risk that the Court could decertify certain claims before the end of trial and decline to certify the remaining uncertified claims on a renewed motion for class certification. *Id.* ¶ 35.

Plaintiffs also recognize that, given the nature and scope of the claims, establishing liability and proving the amount of wages due to each Class Member would be an expensive, time-consuming, and uncertain proposition. *Id.* ¶ 32. Whether Plaintiffs win or lose, an appeal is a near certainty. *Id.* The Settlement obviates all of these risks. *Id.* ¶ 37. The fact that the Settlement will eliminate delay and further expense weighs strongly in favor of approval. *Rodriguez*, 563 F.3d at 966. Where, as here, the parties face significant uncertainty, the attendant risks favor settlement. *Hanlon*, 150 F.3d at 1026.

Accordingly, this factor supports final approval of the Settlement.

### b.  *The Effectiveness of the Proposed Method of Distributing Relief*

The Court previously found that the Settlement's "proposed method of distributing relief is effective for purposes of Rule 23(e)." Doc. No. 181 at 25:27-28. The Settlement provides a straightforward process for distributing the Net Settlement Amount to Participating Settlement Class Members, who are not required to submit a claim to receive a share. Settlement ¶ 43. Individual Settlement Payments will be distributed on a pro rata basis based on the number of Workweeks worked during the Class Period. *Id.* at ¶¶ 38, 43. Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class." *See Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *4 (E.D. Wash. May 2, 2019).

### c.  *The Terms of the Proposed Award of Attorneys' Fees*

Plaintiffs are concurrently filing a motion for attorneys' fees ("Fee Motion") in the amount of $2,121,489.29, which equals one-third of the Maximum Settlement Amount. As detailed in Plaintiffs' Fee Motion, the requested fees are reasonable as a percentage of the recovery, as they represent one-third of the non-reversionary settlement fund. Inclusion of the Direct Settlement Amount and the Retroactive Payment Amount in the common fund recovery is justified for purposes of a fee award calculation based upon a

"catalyst theory," pursuant to which an award of attorney's fees may be appropriate where the "'plaintiffs' lawsuit was a *catalyst* motivating defendants to provide the primary relief sought.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 567 (2004) (citing *Robinson v. Kimbrough*, 652 F.2d 458, 465-66 (5th Cir. 1981)). The requested fees are also reasonable based on Class Counsel's lodestar with the application of an appropriate multiplier due to the contingent nature of the fee agreement and other factors.

The requested fees do not evidence any collusion between the parties. In *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011), the Ninth Circuit set forth three factors for courts to consider in determining whether there is any evidence of collusion: "(1) 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;' (2) 'when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,' (3) 'when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.'" *Id.* at 947 (citations omitted). None of these factors indicate there was collusion between Plaintiffs and BAE.

First, Class Counsel is not receiving a disproportionate distribution of the Settlement. Whereas in *Bluetooth* the class members received no monetary distribution, here the Participating Settlement Class Members are sharing an estimated Net Settlement Amount of $2,008,741.02, with the average gross Individual Settlement Payment of $1,721.17, and some individuals receiving as much as $9,919.61. Gonzalez Decl. ¶¶ 12-13. Furthermore, the Settlement Class Members who settled their claims as part of the direct settlement campaign shared a total of $1,502,955.87, and those who received part of the Retroactive Payment Amount shared a total of $361,512. Doc. No. 179-7 at ¶¶ 2-3; Settlement ¶ 16. There is a clear causal connection between the lawsuit and BAE's payment of the Direct Settlement Amount ($1,502,955.87) and the Retroactive Payment

Amount ($361,512) to Settlement Class Members. The letter BAE sent to Settlement Class Members as part of the November 17, 2023 direct settlement campaign expressly refers to the "risk" of the lawsuit as the reason for the payment, and the release states that the claims being released are "all claims alleged in the complaint [in this matter] … or which could have been alleged based on the facts asserted in the complaint." *See* Doc. Nos. 141-2, 141-6. Second, it is clear that BAE's payment of $1,502,955.87 to approximately 1,379 Settlement Class Members—on the eve of this Court's ruling on Plaintiffs' motion for class certification—was achieved by Class Counsel's advocacy and the "threat of victory." *Graham*, 34 Cal. 4th at 575; *see also Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 968 (1989) (chronology of events can give rise to the inference that the two events are causally related for purposes of catalyst theory). Similarly, BAE paid Settlement Class Members the Retroactive Payment Amount for incorrectly calculated meal and rest period premiums on March 16, 2023, after the lawsuit was filed and *on the day after* my office deposed BAE's 30(b)(6) witness and Director of Payroll, Tricia Graham, about the company's calculation of the regular rate of pay. Doc. No. 179-4 at ¶ 57. Clearly, the lawsuit had a catalytic effect in making BAE recognize it incorrectly calculated meal and rest period premiums at the base hourly rate instead of the regular rate of pay. *See* Doc. No. 113-1 at 23:1-7; Doc. No. 128 at 27:6-17, Graham Dep. 131:10-132:2. Ms. Graham testified that, before September 10, 2022, BAE did not use the weighted average method or include shift differentials and other forms of non-discretionary remuneration in the calculation of the regular rate of pay. Doc. No. 113-1 at 23:1-7. Thus, BAE's "true-up" payments constituted an admission that Plaintiffs' regular rate of pay claim had merit, and BAE sought to minimize its liability by making the retroactive payments and changing its policy during the pendency of the lawsuit. Doc. No. 179-4 at ¶ 57.

Second, the attorneys' fees to Class Counsel are not separate and apart from the class funds. Rather, the payment is being deducted from the $4,500,000 in new funds. Settlement ¶ 39. BAE is not agreeing to pay Class Counsel excessive fees in exchange

for an unfair settlement to the Settlement Class, as the Net Settlement Amount of $2,008,741.02 represents 9.2% of the maximum potential value of the class claims, including the uncertified claims, and approximately 17.7% of the value of Class Counsel's discount of those claims. Doc. No. 179-4 at ¶¶ 29-38. A fee award in the amount of one-third of the common fund is reasonable under California law. *See Laffitte v. Robert Half Int'l Inc.,* 231 Cal. App. 4th 860, 871 (2014) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits").

Third, any fees not awarded to Class Counsel will be allocated to the Net Settlement Amount and will not revert to BAE. Settlement ¶ 38.

Finally, the timing of the payment of attorneys' fees coincides with the payment of settlement funds to Participating Settlement Class Members. *Id*. ¶ 65.

Accordingly, this factor also supports approval of the Settlement.

### d. *Any Agreement Required to Be Identified Under Rule 23(e)(3)*

There is no ancillary agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv); Gordon Decl. ¶ 29.

### 4. The Settlement Does Not Provide Any Preferential Treatment

Under the fourth Rule 23(e)(2) factor, a court must examine whether the proposed settlement provides preferential treatment to any class member. "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.,* 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015). Here, the proposed Settlement poses no risk of unequal treatment, as each Participating Settlement Class Member's Individual Settlement Payment will be calculated pro rata based upon the number of Workweeks worked during the Class Period. Settlement ¶ 43. This apportionment provides those individuals who likely suffered greater harm with a larger share of the recovery. *See Gagnier v. Siteone Landscape Supply LLC*, 2023 WL 8116831, at *9 (C.D. Cal. June 6, 2023) (basing individual settlement amounts on the pro rata share of workweeks "is an appropriate proxy for the degree of harm that the individuals likely suffered due to

Defendant's purported misconduct").

The Settlement provides for Class Representative Enhancement Payments to Plaintiffs up to $20,000 each. *Id*. at ¶ 40. As explained in Plaintiffs' Fee Motion, these modest payments are appropriate based on the substantial risk assumed, the services undertaken, and the rights given up by Plaintiffs on behalf of the Settlement Class. Furthermore, the Ninth Circuit has recognized that incentive payments to named plaintiffs in class actions are permissible. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Rodriguez*, 563 F.3d at 958-69 (finding that the payment of a service award is "fairly typical in class actions"). This Court has already determined that "the service award totaling $20,000 to each Class Representative is fair and reasonable in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class." Doc. No. 181 at 22:11-13.

Thus, the absence of any preferential treatment supports final approval.

### 5. Additional Ninth Circuit Factors

#### a. *The Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). As such, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citation and internal quotation marks omitted).

Here, Class Counsel has significant experience in wage and hour class litigation. Doc. No. 179-4 at ¶¶ 45-54. Class Counsel's endorsement of the Settlement as fair, reasonable, and adequate in light of the risks of further litigation and recommendation that the Settlement be approved "is entitled to significant weight, and weighs in favor of settlement." *Morales v. Stevco, Inc*., 2011 WL 5511767, at *11 (E.D. Cal. Nov. 10, 2011).

#### b. *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of a settlement, courts also

consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528- 29 (C.D. Cal. 2004).

This factor also strongly favors final approval. To date, no Settlement Class Members have objected to the Settlement or opted out. Gonzalez Decl. ¶¶ 8-9. Given the unanimous, positive reaction by Settlement Class Members, final approval is appropriate.

## V.    THE FLSA SETTLEMENT SHOULD BE APPROVED

In evaluating whether an FLSA settlement should be approved, "district courts look to whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Castro*, 2021 WL 2042333, at *8; *see also Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Id*. "Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of inherent differences between class actions and FLSA actions." *Castro*, 2021 WL 2042333, at *9.

Here, because the Settlement is fair, reasonable, and adequate under Rule 23 for the reasons explained above, the Court need only look to whether there is a bona fide dispute regarding the existence and extent of BAE's FLSA liability. *Id*. BAE disputes whether FLSA Collective Members should be compensated for time spent donning and doffing during meal periods. Doc. No. 179-4 at ¶ 29(D). This issue raises a legitimate question over whether BAE may be liable under the FLSA. Plaintiffs have calculated the potential

damages for the FLSA claims related to shifts worked on federal enclaves to be approximately $102,124, not including liquidated damages. *Id*. The FLSA Amount of $15,000 represents approximately 14.7% of the potential recovery. This is within the realm of recoveries that courts have found reasonable for purposes of settling wage and hour disputes. *See, e.g., Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery).

Thus, the Court should finally certify the FLSA collective and find the FLSA Amount to be a fair and reasonable resolution of a bona fide dispute warranting approval.

## VI.    THE PAGA SETTLEMENT SHOULD BE APPROVED

The PAGA statute specifically provides that "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part." Cal. Lab. Code, § 2699(s)(2). "[A] trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021), disapproved of on other grounds by *Turrieta v. Lyft, Inc.,* 16 Cal. 5th 664 (2024). In ascertaining the fairness of a PAGA settlement, the trial court may consider many of the same factors used to evaluate the fairness of class action settlements, "including the strength of the plaintiffs' case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount." *Moniz*, 72 Cal. App. 5th at 77.

Here, the Settlement provides for civil penalties that meet the standard enunciated in *Moniz*. The PAGA claims will be settled for $100,000 which is consistent with PAGA's goal of penalizing Defendant for the alleged violations, deterring future violations, and providing a benefit to the public through enforcement of state labor laws. *Moniz,* 72 Cal. App. 5th at 77. It is significant enough to deter BAE from future violations, creating an effective disincentive for BAE to engage in unlawful business practices. The Settlement provides a substantial benefit to the State of California, with the LWDA receiving $75,000

to assist with the enforcement of labor laws. Settlement ¶ 15. The same factors discussed above with respect to settlement of the class claims apply with equal force to the PAGA settlement. Accordingly, the Settlement fulfills the underlying purpose of the statute and confers a substantial benefit on the public.

In a combined class action and PAGA settlement of wage and hour claims, a court may apply a sliding scale analysis whereby "if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Here, the estimated average Individual PAGA Payment is approximately $12.35, while the estimated average Individual Settlement Payment is $1,721.17. Gonzalez Decl. ¶¶ 13-14. Courts have held that comparable allocations to PAGA penalties in a class action settlement fulfill the purposes of PAGA and warrant approval. *See, e.g., Viceral v. Mistras Group, Inc.*, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017) (granting final approval of $20,000 in PAGA penalties from a $6 million settlement); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (granting final approval of $10,000 in PAGA penalties out of a $3,700,000 settlement); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011) (granting final approval of $10,000 in PAGA penalties out of a $6,900,000 settlement).

The LWDA Payment constitutes 1.6% of the Maximum Settlement Amount. This percentage is in line with other PAGA settlements approved by courts in hybrid cases like this one. *See, e.g., de Cabrera v. Swift Beef Co.,* 2020 WL 13585929, at *9 (C.D. Cal., Nov. 23, 2020) (approving PAGA allocation of 1.0% of gross settlement); *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, at * 9 (C.D. Cal. June 17, 2019) (collecting cases in which courts approved PAGA penalties between 0% and 2% of the gross settlement amount). Thus, the Court should not revisit its previous finding that "the Settlement Agreement's $100,000 PAGA penalty is reasonable, fundamentally fair, and adequate." Doc. No. 181 at 32:16-17.

///

1

## VII.  THE ADMINISTRATION COSTS SHOULD BE APPROVED

2      The Settlement provides for Settlement Administration Costs in the amount of

3  $35,000 to be paid to Phoenix.  Settlement ¶ 32.  "Courts regularly award administrative

4  costs associated with providing notice to the class."  *Ali v. Franklin Wireless Corp*., 2024

5  WL 5179910, at *9 (S.D. Cal. Dec.194, 2024).  Given the scope of the duties to be

6  performed by Phoenix and the size of the Settlement Class, the Court should conclude that

7  the Settlement Administration Costs are fair and reasonably incurred for the benefit of the

8  Settlement Class.  *Id*.

9  ## VIII. CONCLUSION

10      Based on the foregoing arguments and authorities, Plaintiffs respectfully request

11  that the Court grant final approval of the Settlement and enter the proposed judgment.

12

13  DATED:  May 1, 2025                    Respectfully submitted,

14                                         MATERN LAW GROUP, PC

15

16                              By:    */s/ Matthew W. Gordon*
                                       MATTHEW J. MATERN
17                                     DALIA R. KHALILI
                                       KIRAN PRASAD
18                                     MATTHEW W. GORDON
                                       Attorneys for Plaintiffs
19                                     FEDERICO CABRALES, TYCHICUS
                                       STANISLAS, and the Certified Class
20

21

22

23

24

25

26

27

28