MATTHEW J. MATERN (SBN 159798)
MATERN@MATERNLAWGROUP.COM
DALIA KHALILI (SBN 253840)
dkhalili@maternlawgroup.com
KIRAN PRASAD (SBN 255348)
kprasad@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
MATERN LAW GROUP, PC
2101 East El Segundo Boulevard, Suite 403
El Segundo, California 90245
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
 Attorneys for Plaintiffs, individually,
 and on behalf of others similarly situated

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO CABRALES, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BAE SYSTEMS SAN DIEGO SHIP REPAIR, INC., a California corporation; and, DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:21-CV-02122-AJB-DDL<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT**<br><br>Date:      July 1, 2025<br>Time:      2:00 p.m.<br>Courtroom: 4A<br>Judge:      Hon. Anthony J. Battaglia<br><br>Complaint Filed:  October 26, 2021<br>FAC Filed:      January 20, 2022<br>SAC Filed:      August 12, 2022 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................................2

    A. The Parties ...................................................................................................2

III. Procedural Background .......................................................................................3

    B. Plaintiff Conducted Formal and Informal Discovery ....................................5

    C. Settlement Negotiations and Preliminary Approval .....................................6

III. ARGUMENT .......................................................................................................7

    A. Plaintiff's Counsel Is Entitled to Reasonable Attorneys' Fees and Costs ....................................................................................................7

    B. Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable ...........................................................8

    C. Non-monetary nonmonetary benefits conferred by the litigation ................12

    D. Plaintiff's Fee Application Also Is Reasonable Based on Plaintiff's Counsel's Lodestar and the Application of a Positive Multiplier ................13

        1. Plaintiff's Counsel's Hours Are Reasonable .....................................14

        2. Plaintiff's Counsel's Hourly Rates Are Reasonable..........................16

        3. Application of a Positive Multiplier Is Warranted ............................17

    E. Plaintiff's Counsel's Litigation Expenses Should Be Reimbursed..............21

    F. The Proposed Class Representative Service Payment Is Fair and Reasonable..................................................................................................22

IV. CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ayala v. UPS Supply Chain Solutions, Inc.*,
2021 WL 4497881 (C.D. Cal., Aug. 24, 2021)................................................................11

*Barbosa v. Cargill Meat Solutions*,
(E.D. Cal. 2013) 297 F.R.D. 431 ....................................................................................22

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D. N.Y. 2013) ....................................................................................20

*Billinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................................23

*Blackwell v. Foley*,
724 F. Supp. 2d 1068 (N.D. Cal. 2010) ..........................................................................14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..........................................................................................................8

*Bouman v. Block*,
940 F.2d 1211 (9th Cir. 1991).........................................................................................16

*Boyd v. Bank of Am. Corp.*,
2014 WL 6473804...............................................................................................................9

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)...........................................................................................16

*Campbell v. Best Buy Stores, L.P.*,
2016 WL 6662719 (C.D. Cal. Apr. 5, 2016) ....................................................................9

*Cicero v. DirecTV, Inc.*,
2010 WL 2991486 (C.D. Cal. July 27, 2010) ................................................................10

*Coates v. Farmers Grp., Inc.*,
2016 WL 5791413 (N.D. Cal. Sept. 30, 2016) ..............................................................24

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ................9

*Fontes v. Heritage Operating, L.P.*,
2016 WL 1465158 (S.D. Cal. Apr. 14, 2016)................................................................22

*Guippone v. BH S&B Holdings LLC*,
2011 WL 5148650 (S.D. N.Y. Oct. 28, 2011) ................................................................23

*Hardmon v. Ascena Retail Grp., Inc.*,
2022 WL 17572098 (C.D. Cal. Nov. 29, 2022)..............................................................21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................................14

<u>**TABLE OF AUTHORITIES**</u> (Cont'd)

**Page(s)**

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................................12

*In re High-Tech Emp. Antitrust Litig.*,
2014 WL 10520478 (N.D. Cal. May 16, 2014) .................................................................25

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................................9, 22

*In re On-Line DVD Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ..................................................................................24

*In re TD Ameritrade Acct. Holder Litig.*,
2011 WL 4079226 (N.D. Cal. 2011) .........................................................................21

*In re Toys R Us–Delaware, Inc.*,
295 F.R.D. 438 (C.D. Cal. 2014) ...............................................................21, 23, 24

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...............................................................................8, 19

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................................................................9

*Jordan v. Multnomah County*,
815 F.2d 1258 (9th Cir. 1987) ..................................................................................14

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
2014 WL 2967475 (C.D. Cal. June 25, 2014) .................................................................23

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .................................................................9

*Medoff v. Minka Lighting, LLC*,
2024 WL 5275593 (C.D. Cal. July 10, 2024) ..................................................................9

*Mejia v. Walgreen Co.*,
2020 WL 6887749 (E.D. Cal. Nov. 24, 2020) .................................................................10

*Moore v. Jas. H. Matthews & Co.*,
682 F.2d 830 (9th Cir. 1982) ..................................................................................14

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ..................................................................................14

*Morris v. Lifescan, Inc.*,
54 F. App'x. 663 (9th Cir. 2003) ...............................................................................9

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009) .................................................................9

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Navarrete v. Sprint/United Mgmt. Co.*,
  2021 WL 9880475 (C.D. Cal. Nov. 18, 2021).................................................21

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*,
  2015 WL 3622999 (E.D. Cal. June 9, 2015) .................................................21

*Palacios v. Penny Newman Grain, Inc.*,
  2016 WL 8730677 (E.D. Cal. May 27, 2016) .................................................21

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................16, 20

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989).................................................8

*Perkins v. Mobile Housing Bd.*,
  847 F.2d 735 (11th Cir. 1988).................................................14

*Pierce v. Rosetta Stone, Ltd.*,
  2013 WL 5402120 (N.D. Cal. Sept.26, 2013) .................................................22

*Pipich v. O'Reilly Auto Enters., LLC*,
  2024 WL 2885342 (S.D. Cal. June 7, 2024).................................................24

*Principe v. Ukropina*,
  47 F.3d 373 (9th Cir. 1995).................................................9

*Ramirez v. C&W Facility Servs., Inc.*,
  2023 WL 8937607  (C.D. Cal., July 31, 2023).................................................11

*Robinson v. Kimbrough*,
  652 F.2d 458 (5th Cir. 1981).................................................13

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009).................................................22

*Romero v. Producers Dairy Foods, Inc.*,
  2007 WL 3492841 (E.D. Cal. Nov. 14, 2007).................................................10

*Shaw v. Abercrombie & Fitch Co.*,
  2021 WL 8315427 (C.D. Cal., Oct. 15, 2021).................................................11

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010).................................................10

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016).................................................18

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) .................................................19

**TABLE OF AUTHORITIES** (Cont'd)

**Page(s)**

*Stetson v. Grissom*,
821 F.3d 1157 (9th Cir. 2016)....................................................................................14, 18

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir.1993)..................................................................................................12

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990)..............................................................................................16

*Van Ba Ma v. Covidien Holding, Inc.*,
2014 WL 2472316 (C.D. Cal. May 30, 2014) ....................................................................11

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ..............................................................9, 22, 23, 24

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................................8, 10

*Vidrio v. United Airlines, Inc.*,
2023 WL 11932248 (C.D. Cal. June 29, 2023) ..................................................................10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)..............................................................................................8

**State Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
85 Cal. App. 4th 1135 (2000) ............................................................................................12

*Amaral v. Cintas Corp. No. 2*,
163 Cal. App. 4th 1157 (2008) ..........................................................................................19

*Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ............................................................................................15

*DeSaulles v. Cmty. Hosp. of Monterey Peninsula*,
62 Cal. 4th 1140 (2016) .......................................................................................................7

*Frlekin v. Apple, Inc.*,
8 Cal.5th 1038 (2020) ........................................................................................................12

*Gentry v. Sup. Ct.*,
42 Cal. 4th 443 (2007) .......................................................................................................11

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004) ................................................................................................13, 17

*Greene v. Dillingham Construction N.A., Inc.*,
101 Cal. App. 4th 418 (2002) ............................................................................................18

*Hernandez v. Restoration Hardware, Inc.*,
4 Cal. 5th 260 (2018) .........................................................................................................19

## **TABLE OF AUTHORITIES** (Cont'd)

**Page(s)**

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ...............................................................................17, 18, 19

*Krumme v. Mercury Ins. Co.*,
123 Cal. App. 4th 924 (2004) .......................................................................17

*Laffitte II v. Robert Half Int., Inc.*,
1 Cal. 5th 480 ...............................................................................................13

*Lealao v. Beneficial California, Inc.*,
82 Cal. App. 4th 19 (2000) ...........................................................................17

*Lubin v. The Wackenhut Corp.*,
5 Cal. App. 5th 926 (2016) ...........................................................................7

*Ramos v. Countrywide Home Loans, Inc.*,
82 Cal. App. 4th 615 (2000) .........................................................................13

*Serrano v. Priest*,
20 Cal. 3d 25 (1977)......................................................................................13

*Sonoma Land Trust v. Thompson*,
63 Cal. App. 5th 978 (2021) .........................................................................17

*Taylor v. Nabors Drilling USA, LP*,
222 Cal. App. 4th 1228 (2014) .....................................................................19

*Weeks v. Baker & McKenzie*,
63 Cal. App. 4th 1128 (1998) .......................................................................17

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 254 (2001) .........................................................................19

**Federal Statutes**

29 U.S.C. § 201 ......................................................................................................3

28 U.S.C. § 1331 ....................................................................................................3

28 U.S.C. § 1441(a) ...............................................................................................3

28 U.S.C. § 1442(a)(1)...........................................................................................3

**State Statutes**

Cal. Lab. Code § 218.5 ......................................................................................1, 7

Cal. Lab. Code § 226(e)(1) ................................................................................1, 7

Cal. Lab. Code § 1194(a)....................................................................................1, 7

Cal. Lab. Code § 2802 ...............................................................................................1, 7

Cal. Lab. Code § 2802(a) ..............................................................................................7

Cal. Lab. Code § 2699(k)(1) ......................................................................................1, 7

Lab. Code § 226(e)(1) ...................................................................................................7

Lab. Code § 2699(k)(1) .................................................................................................7

Lab. Code § 2802 ..........................................................................................................7

Lab. Code § 2802(c)......................................................................................................7

Cal. Lab. Code § 1194(a) ..............................................................................................8

**Federal Rules**

Fed. R. Civ. P. 30(b)(6)........................................................................................5, 6, 15

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

In conjunction with seeking final approval of the Class Action and PAGA Settlement Agreement ("Settlement" or "Settlement Agreement") that this Court preliminarily approved on December 5, 2024 (Doc. No. 181), Plaintiffs Federico Cabrales and Tychicus Stanislas ("Plaintiffs") move for an award of attorneys' fees in the amount of **$2,121,489.29**, which is one-third of the **$6,364,467.87** Maximum Settlement Fund including $4,500,000 of new funds plus a credit for (1) $1,502,955.87 paid by Defendant BAE Systems San Diego Ship Repair Inc. (BAE" or "Defendant") to Settlement Class Members in individual settlements and (2) $361,512 paid by BAE to Settlement Class Members in March 2023 for underpaid meal and rest period premiums.  Plaintiffs bring their motion pursuant to the common fund method.

Plaintiffs are entitled to reasonable attorneys' fees as the prevailing party under California Labor Code ("Labor Code") §§ 218.5, 226(e)(1), 1194(a), 2802, and 2699(k)(1).[1]  The requested fees are reasonable under the common fund doctrine and they are justified by the excellent recovery—which provides an *outstanding* highest gross Individual Class Payment of **$9,919.61** and an average gross Individual Class Payment of **$1,721.17** per Class Member—as well as the contingent nature of the representation, the skill and experience of Plaintiff's counsel, and the fee awards in comparable wage and hour class actions.  Although the Class Notice advised that Class Counsel would seek up to **$2,121,489.29** in fees, as of the current date, ***not one of the 1,162 Class Members has objected or opted out.***

The common fund method serves to spread the attorneys' fees equally among all the beneficiaries of the MSA, mimics the contingency legal marketplace that would have been implicated had Class Members each individually retained counsel (where percentage fees are generally between 33.33% and 40%), encourages competent counsel to take on

---

[1] All statutory citations are to California statutes.

PLAINTIFF'S MEMO. OF POINTS AND AUTHORITIES
ISO MOTION FOR ATTORNEYS' FEES, ETC.
Case No. 2:23-cv-10797-DSF-BFM

complex contingency cases such as this one and to seek early settlement and avoid unnecessarily prolonging litigation.

The requested fees are also reasonable based on a cross-check of Plaintiff's counsel's lodestar of **$1,189,032.00**, which is based on **1,486.4** hours and a 1.78 multiplier. Application of a multiplier is appropriate based on the contingent nature of the fee agreement, the skill displayed by Plaintiff's Counsel, and the laudable result achieved on behalf of the class.

Plaintiff also seeks $179,769.69 in litigation costs (under the $200,000 maximum listed in the Class Notice) and a Class Representative Service Payment of $20,000 to each of the two named Plaintiffs for their time devoted to the case, the risks they undertook, and the rights they gave up in prosecuting the action.  Both the costs and the service payment are reasonable under California law and the facts and circumstances of this case.

Accordingly, Plaintiff requests that the Court grant this motion in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties

BAE provides ship repair, maintenance, and upgrade services to ships in San Diego County, including at its shipyard located at 2205 East Belt Street, San Diego, California 92113. Matern Decl. ¶ 3.

Plaintiff Federico Cabrales ("Cabrales") initially worked for BAE for approximately four years through a staffing agency, NSC Technologies, LLC ("NSC"), until BAE hired him as a direct employee in January 2018. Declaration of Federico Osuna Cabrales ("Cabrales Decl.") ¶ 3. Cabrales worked as a non-exempt employee of BAE in San Diego until July 2021. Id. His position was a "helper.*" Id.*

Plaintiff Tychicus Stanislas ("Stanislas") initially worked for BAE for approximately six years through NSC until BAE hired him as a direct employee in July 2018. Declaration of Tychicus Stanislas ("Stanislas Decl.") ¶ 3. Stanislas worked as a non-

exempt employee of BAE in San Diego until March 2019. *Id.* His position was a shipfitter. *Id.*

**III.   Procedural Background**

Plaintiff Cabrales filed this action on October 26, 2021 in San Diego Superior Court. Matern Decl. ¶ 6. BAE removed the action to this Court on December 23, 2021, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1442(a)(1). Doc. No. 1.

On January 20, 2022, Plaintiff Cabrales filed a First Amended Complaint ("FAC") adding Plaintiff Stanislas as a named plaintiff.2 Doc. No. 9.

On August 8, 2022, the Court granted in part Defendant's motion to dismiss Plaintiffs' FAC with leave to amend. Doc. No. 20.

On August 12, 2022, Plaintiffs filed the operative Second Amended Complaint ("SAC"). Doc. No. 21. The SAC alleges the following claims: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages to Discharged and Quitting Employees; (6) Failure to Furnish Accurate Itemized Wage Statements; (7) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (8) Unfair and Unlawful Business Practices; (9) Failure to Pay Straight and Overtime Compensation in Violation of 29 U.S.C. § 201 et seq.; and (10) Penalties Under the Labor Code Private Attorneys General Act ("PAGA"), as a Representative Action. *Id.*

On November 17, 2023, BAE mailed out a packet to putative class members containing a cover letter, a copy of the SAC, Plaintiffs' notice to the Labor and Workforce Development Agency ("LWDA"), a Release of Claims, Frequently Asked Questions, a self-addressed stamped envelope, and a settlement check. Doc. No. 145 at 2.

On December 5, 2023, Plaintiffs filed an ex parte application for an order (1) prohibiting BAE from further communications with putative class members regarding the claims at issue in the case, and (2) requiring BAE to provide Plaintiffs' counsel with the identity and contact information for all putative class members to whom BAE sent

settlement communications and who have purportedly released their claims by signing the settlement check and/or release. Doc. No. 141.

On December 6, 2023, the Court issued an order (1) granting in part and denying in part Defendant's motion for partial summary judgment, and (2) granting in part and denying in part Plaintiffs' motion for class certification. Doc. No. 142. The Court granted summary judgment in favor of BAE on Plaintiffs' state law claims as they apply to work performed at Naval Base San Diego, known as 32nd Street, and at Naval Air Station North Island due to the federal enclave doctrine. *Id*. at 17. The Court granted class certification as to the following subclasses: (1) Minimum Wage Security Subclass; (2) Overtime Security Subclass; (3) Rounding Minimum Wage Security Subclass; (4) Rounding Overtime Subclass; (5) Overtime Regular Rate of Pay Subclass; (6) Meal Break Subclass (to the extent it is based upon whether Defendant provided late first meal breaks); (7) Second Meal Break Subclass (to the extent it is based upon whether Defendant denied second meal breaks altogether); and (8) Wage Statement Subclass. *Id*. at 40. The Court further certified derivative claims for failure to pay final wages, waiting time penalties, failure to furnish accurate wage statements, and unfair and unlawful business practices as they relate to the subclasses and underlying claims that were certified. *Id*. at 38-39.

The Court denied class certification with leave to amend as to the following subclasses: (1) Meal Break Subclass (to the extent it is based upon whether BAE failed to provide employees with full meal breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (2) Rest Break Subclass (to the extent it is based upon whether BAE failed to provide employees with full rest breaks due to time spent walking to and from break areas, U.S. Navy checks, donning/doffing, and tending to equipment); (3) Reimbursement Cellphone Subclass; and (4) Reimbursement Personal Protective Gear and Tools/Equipment Subclass. *Id*. at 41. On December 12, 2023, the Court entered an order granting in part and denying in part Plaintiffs' ex parte application. Doc. No. 145. The Court ordered BAE to provide to Plaintiffs' counsel the identity and contact information for those individuals to whom BAE

sent settlement communications and who have purportedly released their claims by signing a settlement check and/or the release. *Id.* at 8. The Court further ordered a "corrective letter" be sent to putative class members explicitly instructing them that they have more time to consider the settlement offer, discuss it with Plaintiffs' counsel, and either complete the settlement or withdraw their prior release as they choose. *Id.* On January 24, 2024, a third-party administrator mailed the corrective letter to class members who were sent the November 17, 2023 settlement packet. Matern Decl. ¶ 14.

BAE paid the total gross amount of $1,502,955.87 in individual settlement payments through the November 17, 2023 direct settlement campaign. Matern Decl. ¶ 15, Ex. 3. Approximately 1,379 individuals who were sent the November 17, 2023 settlement communication by BAE cashed the settlement check and/or signed a release of the claims at issue in this action, for an estimated average payment of $1,089.89 per Settlement Class Member. *Id*. at ¶¶ 16-17.

### B. Plaintiff Conducted Formal and Informal Discovery

Plaintiffs and their counsel were able to make an informed decision regarding settlement, given the significant discovery and investigation conducted prior to resolving the case. Matern Decl. ¶¶ 20-22. After the SAC was filed, the parties completed extensive fact and expert discovery. *Id*. ¶ 20. Plaintiffs propounded multiple sets of written discovery and responded to requests for production of documents and interrogatories. *Id.* BAE produced over 4,000 pages of documents, including all relevant wage and hour policies and Settlement Class Members' timekeeping and payroll records through October 23, 2022. *Id*. The timekeeping records contained electronic data for approximately 1,094,198 shifts worked by Settlement Class Members, including both direct hires of BAE and employees working through NSC and Acro. *Id.* Plaintiffs took the deposition of three witnesses designated by BAE pursuant to Fed. R. Civ. P. 30(b)(6). *Id.* Defendant took Plaintiff Cabrales' deposition on April 13, 2023 and May 10, 2023 and Plaintiff Stanislas's deposition on April 11, 2023. *Id.* Plaintiffs' counsel interviewed dozens of Settlement Class

Members and obtained declarations from thirteen Settlement Class Members, in addition to Plaintiffs, in support of the motion for class certification. *Id.*

Plaintiffs' counsel retained three expert witnesses who submitted reports in support of Plaintiffs' motion for class certification. *Id.* ¶ 21; Doc. No. 113-2, Ex. E, F, G. In addition, Plaintiffs' counsel conducted a site inspection at BAE's shipyard located at 2205 East Belt Street with Brian Grieser, an expert in time and motion studies in workplace settings. See Doc. No. 113-2 at 81-98. Plaintiffs took the deposition of Defendant's expert, J. Michael DuMond, a labor economist who analyzed the timekeeping and payroll data of putative class members. Matern Decl. ¶ 21. Prior to mediation, Plaintiffs' counsel prepared a damages model which was based, in part, on Plaintiffs' expert analysis of the time and payroll records and extrapolation to the end of the class period. *Id.*

Based on the information and record developed through extensive investigation and discovery, Plaintiffs' counsel was able to act intelligently and effectively in negotiating the proposed Settlement. Id. at ¶ 22. Thus, this factor supports final approval.

### C. Settlement Negotiations and Preliminary Approval

The parties attended an Early Neutral Evaluation conference on December 1, 2022. *Id*. ¶ 23. The case did not settle. *Id*. The parties also attended an unsuccessful private mediation with Jeffrey Krivis on December 23, 2022. *Id*.

After the Court granted class certification, the parties agreed to explore potential resolution again and participated in an in-person, private mediation with Hunter Hughes at the offices of Defendant's counsel on February 16, 2024. *Id*. ¶ 24. After the mediation, on February 19, 2024, Mr. Hughes made a mediator's proposal outlining the material terms of a proposed class action settlement. *Id*. ¶ 25. The parties did not accept the proposal but continued to negotiate the terms of a proposed Memorandum of Understanding ("MOU"). *Id*. On March 11, 2024, the parties fully executed the MOU, which called for the parties to enter into a long-form settlement agreement. *Id*. ¶ 26. After months of further negotiations, the parties fully executed the Settlement on October 21, 2024. *Id*. ¶ 25.

## III.    ARGUMENT

### A.    Plaintiff's Counsel Is Entitled to Reasonable Attorneys' Fees and Costs

Under California law, a plaintiff who enters into a stipulated judgment in exchange for the payment of money has obtained a "net monetary recovery" and is the prevailing party. *DeSaulles v. Cmty. Hosp. of Monterey Peninsula*, 62 Cal. 4th 1140, 1158 (2016). Thus, Plaintiff's counsel is entitled to recover reasonable fees and costs pursuant to Labor Code §§ 218.5, 226(e)(1), 1194(a), 2802, and 2699(k)(1). As this litigation culminated in a settlement that provides for recovery of unpaid wages, including minimum wages, Plaintiff is entitled to recover reasonable attorneys' fees and costs under section 1194(a). Pursuant to Labor Code section 226, subdivision (e)(1), an employee who suffers injury is also entitled to costs and reasonable attorney's fees. *Lubin v. The Wackenhut Corp.,* 5 Cal. App. 5th 926, 958 (2016).

Furthermore, Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" Cal. Lab. Code § 2802(a). Labor Code § 2802(c) makes clear that the term "necessary expenditures or losses," for purposes of this section, "shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section." Cal. Lab. Code § 2802(c). Here, because Plaintiff is the prevailing party in an action to enforce rights under Labor Code § 2802, Plaintiff is entitled to be indemnified by Defendants for all reasonable attorneys' fees and costs incurred in the lawsuit.

Finally, pursuant to Labor Code § 2699(k)(1), "any employee who prevails in any action [under PAGA] shall be entitled to an award of reasonable attorney's fees and costs[.]" Cal. Lab. Code § 2699(k)(1). In this case, Plaintiffs brought a claim under PAGA and prevailed by entering into a settlement with Defendants to pay $100,000.00 in PAGA

Penalties.  Exh. 4 at p. 5.[2]  Thus, Plaintiffs are entitled to reasonable attorneys' fees and costs under PAGA, as well as the other statutory provisions set forth above.

## B.    Plaintiff's Request for Attorneys' Fees in the Amount of One-Third of the Common Fund Is Reasonable

Plaintiff's fee request is reasonable under federal law.  The Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  These criteria are "easily met" here because "each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* (citing *Boeing*, 444 U.S. at 479).

Although in *non-diversity* actions, the Ninth Circuit has established 25% of a common fund as a "benchmark" award for attorney fees, that benchmark is only the "starting point for analysis" and "may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048 (9th Cir. 2002). The district court's duty should not presume the benchmark percentage applies, but rather consider "all the circumstances of the case" in arriving at a reasonable percentage.  *Id.* at 1048.

Thus, the "exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast*

---

[2] All exhibits referenced herein are attached to the Declaration of Matthew J. Matern in Support of Plaintiff's Motion For Attorneys' Fees, Costs, And Class Representative Service Payment filed concurrently herewith.

*Valley Roofing, Inc.*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (awarding one-third in wage and hour class action); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding district court's award of one-third of the settlement fund); *Principe v. Ukropina,* 47 F.3d 373, at 378-379 (9th Cir. 1995) (affirming one-third fee of $12 million fund); *Morris v. Lifescan, Inc.,* 54 F. App'x. 663, 664 (9th Cir. 2003) (affirming one-third fee of $14.8 fund).

District courts within this circuit, and in this district, routinely award attorneys' fees in excess of the 25% baseline, particularly for wage and hour class action settlements. *See*, *e.g.*, *Medoff v. Minka Lighting, LLC*, No. 2:22-CV-08885-HDV, 2024 WL 5275593, at *1 (C.D. Cal. July 10, 2024) (granting attorneys' fees of one-third of the Settlement Fund); *Marshall v. Northrop Grumman Corp.,* No. 16-CV-6794 AB (JCx), 2020 WL 5668935, *8-9 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions. 'Nationally, the average percentage of the fund award in class actions is approximately one-third.'") (quoting *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,* No. CV 07-3072 AHM (FMMx), 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009)); *Wright v. Renzenberger, Inc.,* No. CV-13-6642 FMO (AGRx) (C.D. Cal. August 24, 2020); Doc. No. 161 at 13-14 (awarding one-third of the common fund in attorneys' fees); *Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *9-11 (C.D. Cal. Oct. 10, 2019) (same); *Campbell v. Best Buy Stores, L.P.*, No. 2:12-cv-07794-JAK-JEM, 2016 WL 6662719, at *10 (C.D. Cal. Apr. 5, 2016) (awarding one-third of $674,500 in attorneys' fees in a California Labor Code action); *Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW (C.D. Cal. July 11, 2016) (awarding one-third in wage and hour class action); *Boyd v. Bank of Am. Corp.,* 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014 ("An award of one third is within the range of percentages which courts have considered reasonable in other class action lawsuits."); *Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008 at *15-16 (awarding fees constituting 34% of the $8.5 million settlement fund); *Van*

*Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting that fee awards of 30–50 percent of the fund involved relatively smaller funds of less than $10 million).

In fact, in reviewing attorney fee awards in California wage and hour cases in other districts, a district judge in the Central District of California found "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (citing *Vasquez,* 266 F.R.D. at 491-492 [referencing five wage and hour class actions where federal district courts approved attorney fee awards ranging from 30 to 33%]); *see also Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund because class counsel took the case on a contingent basis and litigated for two years, and holding that award was similar to awards in three other wage and hour class action cases where fees ranged from 30.3% to 40%); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding attorneys' fees of 33% of settlement fund).

When assessing the reasonableness of fee awards under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Vidrio v. United Airlines, Inc.,* No. CV 15-795 PSG (MRWX), 2023 WL 11932248, at *8 (C.D. Cal. June 29, 2023). All of these factors support a one-third attorney fee award in this case. This Court requested Plaintiffs address factors such as (1) "whether the results achieved were exceptional"; (2) "nonmonetary benefits conferred by the litigation; and (3) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." Doc. No. 181 at 26:2-27:13. *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC,

2020 WL 6887749, at *10 (E.D. Cal. Nov. 24, 2020) (quotation omitted).

Plaintiff's counsel undeniably achieved an impressive result on behalf of the Class. The **$6,364,467.87** Settlement fund includes $4,500,000 of new funds plus a credit for (1) $1,502,955.87 paid by Defendant BAE Systems San Diego Ship Repair Inc. (BAE" or "Defendant") to Settlement Class Members in individual settlements and (2) $361,512 paid by BAE to Settlement Class Members in March 2023 for underpaid meal and rest period premiums. which provides a net recovery to Class Members of approximately 9.1% of the maximum potential value of the class claims, including the uncertified claims and approximately 17.5% of the value of the discounted class claims, is substantial. *See* Doc. No. 179-1 at 22:26-23:8.

These percentages are in the ballpark of the 10 percent, and less, of the maximum exposure that is commonly approved in class action settlements. *Ramirez v. C&W Facility Servs., Inc.,* No. 220CV11319JVSPVCX, 2023 WL 8937607, at *6  (C.D. Cal., July 31, 2023) (approving settlement where "[t]he Gross Settlement Amount represents nearly 10% of the unreduced, maximum potential recovery amount."); *Shaw v. Abercrombie & Fitch Co.,* No. SACV191490JGBEX, 2021 WL 8315427, at *8 (C.D. Cal., Oct. 15, 2021) (approving settlement where "[t]he gross settlement amount thus represents approximately 10% of the potential recovery."); *Ayala v. UPS Supply Chain Solutions, Inc.,* No. EDCV20117PSGAFMX, 2021 WL 4497881, at *8 (C.D. Cal., Aug. 24, 2021) ("[T]he Gross Settlement amount of $1,800,000.00 appears reasonable even though it is less than 10% of Plaintiffs' admittedly high estimated damages."); *Van Ba Ma v. Covidien Holding, Inc.*, No. SACV 12-2161-DOC, 2014 WL 2472316, at *3 (C.D. Cal. May 30, 2014) (approving settlement where gross recovery was 9.1% of the potential value of case).

Additionally, the highest gross Individual Class Payment is a striking **$9,919.61** with the average gross Individual Class Payment being an ample **$1,721.17**. Exh. 12, Declaration of Mayra Gonzalez ("Gonzalez Dec.") ¶ 13.  Both are unquestionably exceptional recoveries.  *Gentry v. Sup. Ct.,* 42 Cal. 4th 443, 457 (2007) ("[I]ndividual

awards in wage-and-hour cases tend to be modest."), abrogated on other grounds recognized in *OTO, L.L.C. v. Kho,* 8 Cal. 5th 111, 129, n.10 (2019).

The skill displayed by Plaintiff's counsel in reaching an $**6,364,467.87** settlement after successfully moving for class certification and the quality of their work are best reflected in the results accomplished. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir.1993) (expert handling of a case supports an exceptional finding).

Moreover, to date, not one Class Member has objected to the Settlement or the proposed attorney fee award and zero have opted out.  Exh. 12, Gonzalez Decl. ¶¶ 8, 9. This decidedly favorable response to the Settlement supports the reasonableness of the requested attorney fee award.  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award."); *7-Eleven Owners for Fair Franchising v. Southland Corp.,* 85 Cal. App. 4th 1135, 1152-1153 (2000) (noting that a "mere 80 of the 5,454" class members opted out and only 9 objected to the settlement).

### C. Non-monetary nonmonetary benefits conferred by the litigation

Plaintiffs were able to obtain significant nonmonetary benefits as a result of the hard-fought litigation.  First, Plaintiffs alleged that BAE required employees to undergo security checks off-the-clock.  Doc. No. 21 at 24:3-26:5.  As of March 2020, three years into the class period, BAE switched the order of the security checks with the clock-in procedure such that employees were paid for their time undergoing security checks, time which is clearly considered "work" under California law.  Doc. No. 128 at 26:3-15; *Frlekin v. Apple, Inc*., 8 Cal.5th 1038 (2020) (time spent on the employer's premises waiting for, and undergoing, required searches of bags is considered compensable time). Second, Plaintiffs had also contended that until September 2022, one year after Plaintiff filed suit, BAE did not pay rest and meal break premiums at the required regular rate of pay and instead paid the base hourly rate.  Doc. No. 113-1 at 23:1-16. BAE subsequently took steps to rectify the issue and issued back payments public interest and "corrected its

regular rate calculation going forward." Doc. No. 128 at 27:6-23. The security claim and regular rate calculation claim were both ultimately certified.

Inclusion of the Direct Settlement Amount and the Retroactive Payment Amount in the MSA is justified for purposes of a fee award calculation based upon a "catalyst theory," pursuant to which an award of attorney's fees may be appropriate where the "'plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought.'" *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 567 (2004) (citing *Robinson v. Kimbrough*, 652 F.2d 458, 465-66 (5th Cir. 1981)). As set forth in Plaintiffs' Motion for Preliminary Approval, Plaintiffs meet the requirements of for awarding fees based on a catalyst theory. See Doc. No. 179-1 at 26:25-29:3. Permitting Defendants to escape payment for attorney's fees when the litigation certainly prompted a settlement campaign regarding the very same claims at issue in the litigation would undermine the Labor Code's various attorney's fees and cost provisions at issue in this matter.

### D. Plaintiff's Fee Application Also Is Reasonable Based on Plaintiff's Counsel's Lodestar and the Application of a Positive Multiplier

The lodestar cross-check on a percentage method "does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the potential fee award." *Laffitte II v. Robert Half Int., Inc.*, 1 Cal. 5th 480, 574-575 (2016). "If the multiplier calculated by means of a lodestar cross-check is extraordinarily high or low, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range, but the court is not necessarily required to make such an adjustment." *Id*. at 575.

Under the lodestar method, the court considers a compilation of the time spent and a reasonable hourly compensation of each attorney to evaluate the reasonableness of the fee requested. *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000). The hours spent and the reasonable hourly rate are computed to arrive at a "lodestar" figure which may then be augmented or diminished by the court taking into account various

"multiplier" factors. *See Ramos*, 82 Cal. App. 4th at 622 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977)).

Here, Class Counsel's current lodestar is approximately **$1,189,032.00**. Matern Decl. ¶¶ 30, 41; Ex. 7 and Ex. 8. The lodestar amount is reasonable because the **1,486.4** hours of work performed were reasonably necessary and Plaintiff's counsel's hourly rates are within the prevailing rate of attorneys and legal assistants with similar qualifications and experience performing comparable work. *Id.,* ¶¶ 30-41; Ex. 6; Declaration of Michael Rubin ("Rubin Decl.") ¶¶ 8-15; Application of a 1.78 multiplier is warranted on several grounds, as discussed below.

### 1.      Plaintiff's Counsel's Hours Are Reasonable

In determining whether the number of hours expended on the litigation was reasonable, the court must determine that the "time spent was reasonably necessary and that [] counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).[3] "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). The district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. "An attorney's sworn testimony that, in fact, it took the time claimed '…is evidence of considerable weight on the issue of the time required…'" *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quoting *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)).

---

[3] In determining the reasonable number of hours expended on the litigation, "the district court should take into account the reality that some amount of duplicative work is 'inherent in the process of litigating over time.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

Assuming final approval is granted, Plaintiff's counsel will have spent more than four years pursuing this litigation by the time the Settlement funds are disbursed, all while receiving no compensation and advancing thousands of dollars in costs : researching Defendant's wage and hour practices; researching Plaintiffs' claims and Defendant's anticipated defenses; conducting lengthy interviews with the Plaintiffs and reviewing documents, including wage statements and other information provided by them; preparing Plaintiff Cabrales' PAGA notice letter; obtaining personnel records for Plaintiffs; preparation of the original and amended complaints; propounding and responding to written discovery; preparing Plaintiffs for deposition and defending Plaintiffs' depositions; taking depositions of three witnesses designated by BAE pursuant to Fed. R. Civ. P. 30(b)(6); meeting and conferring with Defendant's counsel to obtain relevant documents and information; filing a motion to compel further responses to requests for production of documents; attending discovery conferences; conducting a site inspection of BAE's shipyard; hiring a data analysis expert to analyze BAE's timekeeping and payroll records; subpoenaing records from NSC and Acro; retaining a survey expert to propose a survey of class members; retaining a time and motion expert to conduct the site inspection with Plaintiffs' counsel and to propose a time and motion study; drafting the motion for class certification filings; opposing BAE's motion for partial summary judgment; preparing for mediation and drafting mediation briefs; drafting, negotiating, and revising the Settlement Agreement and Settlement Notice; and preparing the motion for preliminary approval and final approval papers. Matern Decl. ¶ 43, 45.

Plaintiff's counsel has spent approximately **1,486.4** hours litigating the case. Matern Decl. ¶ 40. These hours were reasonably necessary to achieve the result on behalf of the Class Members. *Id.*, ¶ 40. The lodestar does not include time for performing work such as preparing and finalizing the Motion for Final Approval and preparing for and attending the hearing on the motions and, in the event that the Court grants final settlement approval, monitoring the settlement process after final approval is granted and responding to Class Members' inquiries. *Id.*, ¶ 43.

PLAINTIFFS' MEMO. OF POINTS AND AUTHORITIES
ISO MOTION FOR ATTORNEYS' FEES, ETC.
Case No. 3:21-CV-02122-AJB-DDL

### 2.    Plaintiff's Counsel's Hourly Rates Are Reasonable

Plaintiff's counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556 (2009).    To determine the reasonable hourly rate, the court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).    Courts may "find hourly rates reasonable based on evidence of other courts approving similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).    "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was]… sufficient to establish the appropriate rate for lodestar purposes").

Plaintiff's counsel calculated the lodestar based on their hourly rates:

| Attorney | Year Admitted | 2025 Rate |
|---|---|---|
| Matthew J. Matern | 1992 | $1,200 |
| Debra J. Tauger | 1989 | $1,100 |
| Matthew W. Gordon | 2009 | $975 |
| Dalia Khalili | 2007 | $1,025 |
| Kiran Prasad | 2007 | $1,000 |
| Scott Brooks | 1992 | $995 |
| Kristen Doyan | 2022 | $600 |
| Erin R. Hutchins | 2022 | $600 |
| Nora Katz | 2023 | $550 |
| Rebecca Liu | 2023 | $550 |

| Joyce Lee | 2023 | $500 |
|---|---|---|
| Hayley Davis | 2024 | $500 |
| Margaret P. Crowley | 2024 | $500 |
| Legal Assistants | N/A | $325 |

These rates are within those years' prevailing hourly rates of attorneys and legal assistants with comparable qualifications, backgrounds, and experience working in employment law in Los Angeles County. Matern Decl. ¶¶ 19-25. Another highly accomplished attorney, Michael Rubin, confirms that Plaintiff's counsel's historic rates are reasonable and within those years' prevailing rates. Rubin Decl. ¶¶ 11-15. These rates are also within the range previously approved by numerous courts in similar cases Plaintiffs' counsel has handled. Matern Decl. ¶¶ 28-29; Ex. 6. Based on this evidence, Class Counsel's hourly rates should be approved.

### 3. Application of a Positive Multiplier Is Warranted

After the court determines the lodestar value, the court may enhance the lodestar by imputing a multiplier to take into account various factors including: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award; (4) the result obtained by the litigation; (5) the quality of the representation; and (6) any delay in receipt of payment. *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132, 1138 (2001). "[A]ny one factor may justify an enhancement." *Krumme v. Mercury Ins. Co.,* 123 Cal. App. 4th 924, 947 (2004). Contingent risk, alone, can fully justify a multiplier. *Sonoma Land Trust v. Thompson,* 63 Cal. App. 5th 978, 988 (2021) ("In our view, the contingent risk factor alone was sufficient to justify the fee enhancement."); *Krumme*, 123 Cal. App. 4th at 947 (a multiplier may be justified solely on the contingent risk factor).

California courts have a more "permissive attitude on the use of multipliers" than their federal counterparts. *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 43

(2000); see also *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998) (finding that "adjustment from the lodestar figure will be far more common under California law than under federal law").

The California Supreme Court held that fee enhancement in contingency cases is necessary to (1) fully compensate counsel for the "loan" of legal services in light of the inherent high risk of "default" posed by losing the case, and (2) encourage competent counsel to take on fee award cases. *Ketchum*, 24 Cal. 4th at 1132-1133. *See also Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 584 (2004) ("[P]ayment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable.").

The Court's starting point was its acknowledgment that the very purpose of the lodestar adjustment method is "to fix a fee at the fair market value." *Ketchum,* 24 Cal. 4th at 1132. The Court then zeroed-in on the undeniable fact that, because there is a great risk of *no payment*, a lawyer is *not receiving* the fair market value for his or her services if a multiplier is not applied:

> A lawyer who both *bears the risk* of not being paid and provides legal services is *not receiving* the *fair market value* of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be *reluctant to accept* fee award cases.

*Id.* at 1133 (emphasis added); *see also Greene v. Dillingham Construction N.A., Inc.*, 101 Cal. App. 4th 418, 426 (2002) (holding that trial court erred by refusing to consider contingent risk as a factor in the decision to apply a multiplier).

Similarly, the Ninth Circuit has held that "[t]he district *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'" *Stetson,* 821 F.3d at 1166 (emphasis in original) (quoting *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016)).

The significance of a multiplier cannot be overstated. Most notably, *Ketchum* declared it is "*earned compensation*"—not a gift. *Ketchum*, 24 Cal. 4th at 1138. Indeed,

the *Ketchum* court made that point four times over the following two sentences.

> [U]nlike a *windfall*, it is neither *unexpected* nor *fortuitous*. Rather, it is intended to approximate market-level compensation for such services, which *typically includes a premium* for the risk of nonpayment….

*Id.* (emphasis added). *Ketchum* thus stands for the principle that, in cases taken on a purely contingent basis, it is virtually impossible to bring a plaintiff's counsel's compensation "into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis" unless a "premium" (*i.e.*, a multiplier) is provided. *Id.* at 1132.

Thus, by *Ketchum's* logic, a positive multiplier must be the norm. "'The experience of the marketplace indicates'" that unless a "'premium'" is awarded, employees will "generally" not be able to find lawyers willing to work on a contingency basis. *Id.* at 1136 (citation omitted). Of course, *Ketchum* acknowledges that a multiplier is not absolutely "required." *Id.* at 1138. As with any rule, there can be exceptions if special circumstances are shown. But, *Ketchum* left no doubt that "the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case;* it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano*[.]" *Ketchum,* 24 Cal. 4th at 1138 (original italics).

It is precisely because the risk of non-payment is so great that state and federal courts applying California law have not hesitated to affirm contingent risk multipliers of 2.0 and higher in order to attract attorneys to cases of significant societal importance and "to compensate them for the risk of loss generally in contingency cases *as a class*." *Id.* at 1133 (original italics); *Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1216-1217 (2008) (noting that "'litigation is fraught with uncertainty and even the most scrupulous attorney will "win some and lose some," and for that reason "[o]ur courts have recognized that an enhanced fee award is necessary to compensate attorneys for taking such risks….'"); *Taylor v. Nabors Drilling USA, LP,* 222 Cal. App. 4th 1228, 1252 (2014) ("In cases involving the enforcement of constitutional or statutory rights, 'such fee enhancements may make such cases economically feasible to competent private attorneys.'").

Under California law, "[m]ultipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 254-255 (2001), disapproved on other grounds in *Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260, 274 (2018). Federal courts have reached similar conclusions. In fact, federal "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994); *see also, Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (concluding that a 6.85 multiplier "falls well within the range of multipliers that courts have allowed" in common fund cases); *Parkinson*, 796 F. Supp. 2d at 1170 ("multipliers may range from 1.2 to 4 or even higher"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D. N.Y. 2013) (awarding 6.3 multiplier because counsel achieved an early settlement and the settlement amount of over $4.8 million was substantial, and observing that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").

Here, application of a 1.78 multiplier is appropriate for these same reasons and even others. Matern Decl. ¶¶ 30, 44. Plaintiff's counsel obtained a commendable seven-figure recovery for the Class and generous individual payments in a relatively short time (one year from filing), and there are *no objections or requests for exclusion*. Ex. 12, Gonzalez Dec. ¶ 8, 9. This case raised difficult issues and Defendants pled numerous defenses, making class certification on all of Plaintiff's claims uncertain. Matern Decl. ¶¶ 46-47.

Although Plaintiff's counsel were cautiously optimistic about the chances of prevailing at trial, they nevertheless recognized that if the litigation had continued, they may have encountered significant legal and factual hurdles that could have prevented the putative class from obtaining full recovery for their claims. *Id.* In the event Plaintiffs obtained a favorable judgment, an appeal was a near-certainty. *Id.*

Accepting this case on a contingent fee basis, and in the process assuming considerable risk given the uncertain proposition these types of cases entail, deserves application of a multiplier. Plaintiff's counsel received no payment during the more than three years the case has been pending, while expending time and resources which could

have been directed toward other cases.  Matern Decl. ¶¶ 45, 46. Plaintiff's counsel incurred over $179,769.69 in out-of-pocket expenses.  *Id.,* ¶ 53; Ex. 9 and Ex. 10.  And Plaintiffs' counsel bears the genuine risk of nonpayment.

The quality and skill of Plaintiff's counsel's representation was markedly high as demonstrated by their background as experienced litigators in wage and hour law. *Id.,* ¶¶ 30-34. Plaintiff's counsel conducted extensive investigation into the claims and maximized the settlement value though negotiations with Defendants over the course of two days of mediation. *Id.,* ¶ 23, 24. Plaintiff's counsel's experience and specialized skill in this area of the law was a significant asset to the Class Members. *Id.* Based on these factors, a 1.78 multiplier is justified.

### E.   Plaintiff's Counsel's Litigation Expenses Should Be Reimbursed

The Settlement provides for Class Counsel to receive a Class Counsel Litigation Expenses Payment up to $200,000.  Ex. 4, at p. 11.  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. *Navarrete v. Sprint/United Mgmt. Co.*, No. 819CV00794JLSADS, 2021 WL 9880475, at *4 (C.D. Cal. Nov. 18, 2021).

To date, Plaintiff's counsel has expended **$179,769.69** in litigation costs, well under the $200,000 maximum provided for in the Settlement.  Matern Decl. ¶ 53; Ex. 8. The costs expended include: state filing fees of $1,435, jury fees of $150, service of process fees of $120, court document services of $5,606.71, expert services of $116,495.95, mediation fees of $20,000; and court reporter services of $11,488.91. Matern Decl. ¶ 44; Ex. 9 and Ex. 10. "Courts routinely approve reimbursement of such costs [in class action settlements]." *Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, No. 2:13-CV-00672-KJM, 2015 WL 3622999, at *13 (E.D. Cal. June 9, 2015), citing *In re Toys R Us–Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 469 (C.D. Cal. 2014) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically

recoverable." [internal quotation marks omitted]); *see also Hardmon v. Ascena Retail Grp., Inc.*, No. EDCV1902207MWFKKX, 2022 WL 17572098, at *9 (C.D. Cal. Nov. 29, 2022) (approving costs, "including filing fees, court fees, service of process fees, and costs associated with photocopying and scanning documents"); *Palacios v. Penny Newman Grain, Inc.*, No. 114CV01804DADSAB, 2016 WL 8730677, at *11 (E.D. Cal. May 27, 2016) (approving as reasonable costs for mediation, mileage, filing fees, parking, jury fees, costs of service, "and other normal litigation costs"); *In re TD Ameritrade Acct. Holder Litig.*, No. C07-2852 SBA, 2011 WL 4079226, at*16 (N.D. Cal. 2011) (approving costs for filing fees, photocopying costs, messenger and travel costs and other administrative expenses, based on settlement); *Pierce v. Rosetta Stone, Ltd.,* No. 1101283, 2013 WL 5402120, at *6 (N.D. Cal. Sept.26, 2013) (reimbursing mediation fees)*; Barbosa v. Cargill Meat Solutions* (E.D. Cal. 2013) 297 F.R.D. 431, 454 (costs associated with travel, photocopying, and mediation fees are "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413-MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which included "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses").

As shown above, Plaintiff's counsel's expenses are reimbursable because they are reasonable and were necessarily incurred in prosecuting this case, and they are the type that would normally be billed to a fee-paying client. Matern Decl. ¶ 43. Thus, Plaintiffs request that the Court award their counsel costs in the amount of **$179,769.69**.

F.      **The Proposed Class Representative Service Payment Is Fair and Reasonable**

"Incentive awards are fairly typical in class action cases. . . . Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citation omitted). These payments work both as an inducement to participate in the suit and as compensation

for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describing the service award as an incentive to the class representative). So long as the service payment does not create a conflict of interest between the class representative and class members, enhancement awards to named plaintiffs for their services as class representatives are customary and generally approved. *See Van Vranken,* 901 F. Supp. at 300.

The proposed service payment is also fair and reasonable under the five-factor test set forth in *Van Vranken.* Under the *Van Vranken* test, courts consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Id.* at 299 (citations omitted). However, not all factors need to be present. Rather, the court may weigh the factors and award fees that are "just and reasonable under the circumstances." *See*, *e.g.*, *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 472 (citing *Van Vranken*, 901 F. Supp. at 299).

First, the requested service payment is justified in light of the reputational risk that Plaintiffs assumed by litigating claims against their former employers. Matern Decl. ¶ 58; *Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-268 (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily learn that a prospective employee served as a plaintiff through the internet); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029 (CM), 2011 WL 5148650, at *7, *20 (S.D. N.Y. Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person. Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

Employers commonly screen employee candidates to determine whether they have

ever filed suit, and employee candidates who might be branded "litigious" are likely to be screened out of the process. In fact, an entire industry has developed for providing employers with background information on employee candidates. By bringing this action against their former employers, Plaintiff assumed considerable reputational risk that may impact their ability to find future employment. Matern Decl. ¶ 48; *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff, in part, for attesting to their fear that the lawsuit will harm their future job prospects in the industry).

Second, the requested service payment is appropriate because Plaintiffs "remained fully involved and expended considerable time and energy during the course of the litigation." *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 471 (citation omitted). As detailed in their declarations, Plaintiffs greatly assisted their attorneys with the prosecution of their claims and their contribution to the litigation should be rewarded. Cabrales Decl. ¶ 4; Stanislas Dec. ¶ 4.

Third, Plaintiffs are entitled to the service payment because they "will not gain any benefit beyond that [they] would receive as an ordinary class member." *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund").

Also, it would be unfair to limit Plaintiffs' service payments to an amount not much greater than an absent Class Member's share of the recovery, in light of the factors discussed above. The Court should award the requested amount to encourage employees like Plaintiff "to don the helm of class champion[] and thereby advance the important public policies behind class actions." *Pipich v. O'Reilly Auto Enters., LLC*, No. 3:21-CV-01120-AHG, 2024 WL 2885342, at *12 (S.D. Cal. June 7, 2024)

Due to Plaintiffs' efforts, commitment, and personal sacrifices, all Class Members can now benefit from an $6,364,467.87 settlement. The $20,000 service payment for each named Plaintiff—which will not significantly reduce the Settlement fund and which was

not conditioned on Plaintiffs' approval of the Settlement—represents only 0.6% of the Settlement amount. The payment falls within the range that courts in the Ninth Circuit routinely approve. *See, e.g., In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934, 947-948 (9th Cir. 2015) (approving incentive awards that comprised in the aggregate less than 1% of the gross settlement value); *Coates v. Farmers Grp., Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at \*2 (N.D. Cal. Sept. 30, 2016) ("The request for service awards . . . in the amount of $25,000 each is reasonable given the risks these Plaintiffs assumed and the amount of time they spent in conjunction with prosecuting this case"); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2014 WL 10520478, at \*2–3 (N.D. Cal. May 16, 2014) (approving $20,000 service award to each of six class representatives from a $20,000,000 settlement fund).

Fourth, this Court observed that Plaintiff Cabrales has been involved in this action since October 2021, and Plaintiff Stanislas has been involved since January 2022 and both have assisted in the litigation of this case. Doc. No. 180 at 21:23-22:14. The Court concluded that the requested service award of $20,000 each "is fair and reasonable in light of the extraordinary risks they accepted and the time and effort they expended for the benefit of the Class." *Id*. at 22:11-14.

Thus, the proposed payment is reasonable and well-deserved based on Plaintiffs' commitment to this case, their provision of services as class representatives, the postponement of their own claims for the benefit of the Class, their placing the Class's interests ahead of their own, their undertaking professional and financial risk, and their more comprehensive release of rights. Matern Decl. ¶¶ 54-59 .

## IV.   CONCLUSION

Based on the foregoing arguments and authorities, Plaintiff respectfully requests that the Court award (1) Matern Law Group, PC attorneys' fees in the amount of $2,121,489.29 and litigation expenses in the amount of $179,769.69, and (2) Plaintiff a Class Representative Service Payment to each Named Plaintiff in the amount of $20,000.00 (totaling $40,000.00).

DATED:  May 1, 2025                    Respectfully submitted,

MATERN LAW GROUP, PC


By:    */s/ Kiran Prasad*
       MATTHEW J. MATERN
       DALIA R. KHALILI
       KIRAN PRASAD
       MATTHEW W. GORDON
       Attorneys for Plaintiffs

PLAINTIFFS' MEMO. OF POINTS AND AUTHORITIES
ISO MOTION FOR ATTORNEYS' FEES, ETC.
Case No. 3:21-CV-02122-AJB-DDL